**No. 26-____**

# In the United States Court of Appeals
## for the Ninth Circuit

DEIA WILLIAMS,
*Plaintiff-Petitioner*,

v.

CAPITAL ONE FINANCIAL CORP.,
*Defendant-Respondent*.

On Petition for Permission to Appeal from the United States District Court for the Northern District of California, Case No. 3:24-cv-05985-TLT (Hon. Trina L. Thompson)

**PETITION FOR PERMISSION TO APPEAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(f)**

J. Gerard Stranch IV
Michael C. Iadevaia
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com
miadevaia@stranchlaw.com

Lesley Weaver
Anne K. Davis
STRANCH, JENNINGS & GARVEY, PLLC
1111 Broadway
Suite 300
Oakland, CA 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

Lynn A. Toops
COHENMALAD, LLP
One Indiana Square
Suite 1400
Indianapolis, IN 46204
(317) 636-6481
ltoops@cohenmalad.com

*Counsel for Plaintiff-Petitioner*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................1

BACKGROUND ........................................................................................3

I. Factual History ........................................................................................3

II. Procedural History........................................................................................6

REASONS FOR GRANTING THE PETITION........................................................8

I. The District Court's Predominance Holding Is Manifestly Erroneous........................................................................................8

A. The district court disregarded this Court's precedent in concluding that consent requires individualized proof...............8

B. The district court abandoned Rule 23's rigorous analysis by disregarding common evidence, ignoring the experts, and inventing individualized issues. ........................................12

C. The district court erred in concluding that standing requires individualized proof. ..................................................17

D. The district court ignored Plaintiff's request for a Rule 23(b)(2) class. ..................................................................19

II. The Petition Presents Fundamental Issues of Law Relating to Class Actions, Important Both to This Litigation and Generally. ......20

CONCLUSION........................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Accellion, Inc. Data Breach Litig.*,
2025 WL 2799102 (N.D. Cal. Sep. 30, 2025) ..................................... 15, 17, 22

*Bradach v. Pharmavite, LLC*,
735 F. App'x 251 (9th Cir. 2018) .....................................................................9

*Calhoun v. Google LLC*,
349 F.R.D. 588 (N.D. Cal. 2025).....................................................................11

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........................................................... 2, 8, 9, 10

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ........................................................................ *passim*

*Cline v. Sunoco, Inc (R&M)*,
159 F.4th 1171 (10th Cir. 2025) ......................................................................13

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006).........................................................................................18

*Davis v. Fed. Election Comm'n*,
554 U.S. 724 (2008)...........................................................................................2

*In re District of Columbia*,
792 F.3d 96 (D.C. Cir. 2015)............................................................................14

*DZ Reserve v. Meta Platforms, Inc.*,
96 F.4th 1223 (9th Cir. 2024) ............................................................ 13, 15, 21

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ............................................................. 12, 14, 18

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..........................................................................19

*In re First Alliance Mortgage Co.*,
471 F.3d 977 (9th Cir. 2006) .................................................................... 2, 15

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025)........................................................ 10, 13, 15

*Garmong v. Tahoe Reg'l Plan. Agency*,
806 F. App'x 568 (9th Cir. 2020)......................................................................18

*Griffith v. TikTok, Inc.*,
2024 WL 4308813 (C.D. Cal. Sep. 9, 2024) .....................................................13

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2024) ...................................................11

*In re Lamictal Direct Purchaser Antitrust Litig.*,
957 F.3d 184 (3d Cir. 2020) ..............................................................................12

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) ........................................................................ 3, 21

*Miles v. Kirkland's Stores Inc.*,
89 F.4th 1217 (9th Cir. 2024) ...........................................................................16

*In re Monumental Life Ins. Co.*,
365 F.3d 408 (5th Cir. 2004) .............................................................................21

*Noohi v. Johnson & Johnson Consumer Inc.*,
146 F.4th 854 (9th Cir. 2025) ...........................................................................22

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ..............................................................................14

*Rodriguez v. Google LLC*,
772 F.Supp.3d 1093 (N.D. Cal. 2025)...............................................................10

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ...........................................................................20

*Sali v. Corona Reg'l Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018) ....................................................................... *passim*

*Senne v. Kansas City Royals Baseball Corp.*,
934 F.3d 918 (9th Cir. 2019) ....................20

*Simpson v. Dart*,
23 F.4th 706 (7th Cir. 2022) ....................16

*Torres v. Prudential Financial, Inc.*,
2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ....................10

*True Health Chiropractic, Inc. v. McKesson Corp.*,
896 F.3d 923 (9th Cir. 2018) .................... 11, 12

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*,
593 F.3d 802 (9th Cir. 2010) ....................17

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017) ....................8

*Van v. LLR, Inc.*,
61 F.4th 1053 (9th Cir. 2023) ....................11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).................... 1, 12

**Rules**

Fed. R. Civ. P.
23(b)(2) .................... 2, 19, 20
23(b)(3) ....................19
23(f).................... 3, 8, 14

# INTRODUCTION

Rule 23 requires hard work, not guesswork. The Supreme Court requires district courts to undertake a "rigorous analysis" of Rule 23's requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351–52 (2011). That "rigorous analysis" requires district courts to apply the governing legal standards, weigh all competent evidence, and decide certification based on the record—not speculation. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018).

The record here should have made the district court's "rigorous analysis" a straightforward exercise. Plaintiff challenges a single course of conduct: Capital One's uniform use of tracking technologies to collect and send to third parties the personal and financial information consumers entered while applying for a credit card or seeking preapproval, without their consent. Those transmissions turned a private credit application process into one shared with Meta, Google, Adobe, Skai/Kenshoo, and others. Plaintiff supported those allegations with unrebutted expert testimony showing that Capital One uniformly configured the challenged technologies to send the same categories of information to the third parties, Capital One's own records, and the only two disclosures every class member received—which the district court found did not disclose the challenged practices. That common evidence provides the proof needed to answer the central Rule 23 questions in one stroke for every class member: how Capital One configured its tracking

technologies, what they collected and transmitted, what disclosures consumers received, and whether those practices were lawful.

The district court nevertheless denied class certification based on purported individualized issues, repeatedly cutting corners around the record and ignoring binding precedent. The examples are numerous. In *Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024), this Court held that consent is an objective inquiry. The district court instead said it was a subjective inquiry, finding individualized issues despite a record showing only two uniform disclosures. In *Sali*, 909 F.3d at 1006, this Court made clear that Rule 23's rigorous analysis requires district courts to consider all relevant evidence in the record. Yet the district court inexplicably disregarded Plaintiff's unrebutted expert testimony and Capital One's own records showing that the challenged technologies uniformly transmitted the same categories of information to the same third parties. In *In re First Alliance Mortgage Co.*, 471 F.3d 977, 991 (9th Cir. 2006), this Court rejected the notion that Rule 23 requires every class member's experience to be identical. The district court imposed that very requirement, faulting Plaintiff for failing to prove that every transmission was exactly the same. Article III standing must be analyzed claim by claim—not "in gross." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). The district court ignored that rule too, applying the same flawed standing analysis to every claim. And although Plaintiff separately sought certification under Rule 23(b)(2), the court

did not address that request at all. Taken together, these errors fall well short of the "rigorous analysis" Rule 23 requires.

When a certification order repeatedly departs from controlling precedent, as the district court has here, it becomes exactly the kind of "manifestly erroneous" decision—indeed, so "obviously wrong"—that Rule 23(f) stands ready to correct. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 958 (9th Cir. 2005). Worse still, if left undisturbed, the decision creates a roadmap to defeat certification in virtually every privacy case: ignore unrebutted expert evidence establishing a defendant's uniform conduct, speculate over individualized issues, and demand impossible proof that every data transmission was identical. To adopt such a rule would "sound the death-knell" not only for this case, but "of the class action device" in other data privacy cases and beyond. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). This is precisely the sort of order Rule 23(f) was designed to correct, and the Court should grant Plaintiff's petition.

## BACKGROUND

### I. FACTUAL HISTORY

Consumers visiting Capital One's preapproval and credit card application webpages were not interacting only with Capital One. Behind the scenes, Capital One deployed tracking technologies from Meta, Google, Adobe, and Skai/Kenshoo to identify users and transmit the personal and financial information they entered

into their applications to third parties. *See* Dkt. 187-2, ¶¶ 13–14.[1] Capital One viewed that surveillance as necessary "to improve marketing performance," Dkt. 187-11 at 21:13–14. Capital One's uniform disclosures—according to its own witnesses and Plaintiff's unchallenged expert, Dr. Serge Egelman—never informed consumers that these third-party technologies were collecting and sharing their information. Dkt. 187-1 at 5 n.2, 11; Dkt. 187-7 at 216:13–14; Dkt. 187-15, ¶¶ 193–96. And Capital One never compensated consumers for harvesting their data without their permission. Dkt. 187-1 at 19.

Plaintiff's unchallenged liability expert, Dr. Egelman, demonstrated that those technologies all operated in a common manner. Dkt. 187-15, ¶¶ 145–97; Dkt. 187-23, ¶¶ 4–19. Capital One collected information from consumers as they applied for credit cards or sought preapproval, then transmitted that information to third parties through tracking tags and server-to-server technologies. The data collected and transmitted included personal or unique identifiers, contact information, application-status information, IP addresses, browser and device identifiers, application IDs, supposedly obfuscated FICO score segments, supposedly obfuscated income segments, and other information associated with the application process. Dkt. 187-15, ¶¶ 145–97; Dkt. 187-23, ¶¶ 4–19. Third parties then use that information to match

---

[1] Citations to "Dkt." refer to docket entries in the district court action, *Williams v. Capital One Financial Corp.*, No. 3:24-cv-05985 (N.D. Cal.).

Capital One users against their own databases, build profiles of those users, and improve the performance of advertising algorithms. Dkt. 187-15, ¶¶ 133–34. Capital One understood that more complete data, which in turn enhanced its own ability to conduct targeted advertising and improve marketing outcomes. Dkt. 187-11 at 19:6–20, 21:13–14, 24:3–16.

Dr. Egelman also showed that these technologies were designed to operate beyond consumers' privacy controls. Capital One used server-to-server technologies that transmitted data directly from its servers to third-party servers, making the transmissions invisible to website users and impossible to block through any browser restrictions. Dkt. 187-15, ¶ 116. It also configured third-party cookies to appear as first-party cookies, preventing them from being blocked by browser settings. *Id.*, ¶¶ 136–38. But, in any event, third-party cookies are rarely blocked. *Id.*, ¶¶ 56–57.

The named Plaintiff's experience reflects this conduct. Capital One's records show that when Plaintiff applied for a Capital One credit card, its tracking technologies intercepted and transmitted Plaintiff's data—including unique identifiers, IP address, employment status, hashed name, hashed email address, hashed phone number, whether her application was approved, supposedly obfuscated FICO segment, supposedly obfuscated income segment, and other information—to third parties. Dkt. 239-1 at 11–12. Capital One's documents confirm that Plaintiff's information appeared in the same internal tables, passback files, and

tracking systems used for other website users. *Id.* This evidence, including Dr. Egelman's unchallenged expert analysis, therefore establishes a uniform course of conduct: Capital One deployed the same tracking technologies, collected the same categories of information, transmitted that information through the same mechanisms, and used it for the same purposes across the proposed classes.

Plaintiff's damages expert, Eric Krause, opined that the information transmitted was valuable. Capital One internally valued this data because it allowed third parties to identify users, connect online activity to real individuals, and improve the effectiveness of advertising algorithms. Dkt. 187-53, ¶¶ 157–61. Capital One itself estimated that a single intercepted email address was worth about $23, Dkt. 187-9 at -420, while its agreements with third parties permitted those companies to use the transmitted information to improve their own advertising products and services, which could then be used by fourth parties. Dkt. 187-1 at 5 n.2.

## II. PROCEDURAL HISTORY

Plaintiff filed this case on August 26, 2024, asserting causes of action under federal and state law. Dkt. 1. The district court granted in part and denied in part Capital One's motion to dismiss. Dkt. 59. As part of its analysis, the district court considered Capital One's disclosure and concluded that it "does not state that it releases that customer's personal information such as employment information and credit card preapproval or approval status." Dkt. 59 at 6.

After extensive discovery, including expert discovery concerning Capital One's tracking technologies and data-sharing practices and the value of the data, Plaintiff moved to certify four classes of Capital One users whose information was transmitted through server-to-server technologies and tracking tags. Dkt. 187-1. Plaintiff filed four motions to exclude Capital One's experts, and Capital One moved to exclude only Mr. Krause, Plaintiff's damages expert.

On June 16, 2026, the district court denied certification and denied "as moot" the five *Daubert* motions. Order at 13 (Dkt. 314). The district court did not cite any evidence or opinion from any expert. Although the court recognized that Capital One used multiple tracking technologies and that Plaintiff identified "12 categories" of allegedly protected information transmitted through those technologies, it concluded that predominance was lacking because Plaintiff had "not shown that Capitol [*sic*] One transmitted each category of 'personal and financial data' for each putative class member in a uniform manner to third-parties." *Id.* at 9–10. The court also held that Capital One's consent affirmative defense raised individualized issues because it believed the consent analysis turns on "a user's subjective understanding of the terms of the relevant agreement," and so it would need to determine whether each user "knew about and consented to the interception." *Id.* at 10–11. Finally, the court held that standing also raised individualized issues because it would need to determine "what, if any, data was shared, how that data was shared, for what purpose the data

was shared, and the nature of that data shared with respect to each plaintiff." *Id.* at 12.

## REASONS FOR GRANTING THE PETITION

This Court's review under Rule 23(f) is "most appropriate" when the district court's order is (1) "manifestly erroneous"; (2) raises "unsettled and fundamental issue[s] of law"; or (3) is likely dispositive of the litigation—the "death-knell situation" for the plaintiff. *Chamberlan*, 402 F.3d at 959. This Court also has "broad discretion" to review a "worthy" appeal even if "a petition [] does not fit" any of these three buckets. *Id.* at 960.

This case easily satisfies all grounds for Rule 23(f) review. The district court repeatedly departed from controlling Ninth Circuit authority, adopted a position that fundamentally redefines Rule 23, and effectively ended the case. If review is not granted now, there will be little left to review later.

### I. THE DISTRICT COURT'S PREDOMINANCE HOLDING IS MANIFESTLY ERRONEOUS.

#### A. The district court disregarded this Court's precedent in concluding that consent requires individualized proof.

In *Calhoun*, this Court expressly held that "consent is 'an affirmative defense for which defendant bears the burden of proof.'" 113 F.4th at 1147 (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017)). It further held that consent turns on an objective inquiry: "whether the circumstances, considered as a whole, demonstrate that a *reasonable person* understood that an

action would be carried out so that their acquiescence demonstrates knowing authorization." *Id.* (emphasis added); *see also id.* at 1149, 1151 (explaining "the governing standard" on the consent defense "is what a 'reasonable user' of a service would understand they were consenting to"—which turns on the "level of sophistication attributable to the *general public*," not individuals (emphasis added)).

The district court's conclusion that consent defeats predominance conflicts with *Calhoun* for two reasons. ***First***, the district court applied the entirely wrong legal standard. The district court said that "the consent inquiry focuses on a user's subjective understanding of the terms of the relevant agreement." Order at 10. But *Calhoun* required the district court to ask a different—objective, not subjective—question: whether, considering the written disclosure as a whole, "a reasonable person" would understand that the challenged conduct would occur. 113 F.4th at 1147.

Had the district court applied the objective standard that *Calhoun* requires, it would have found predominance easily satisfied. The "reasonable person" standard is a hallmark common question capable of resolution in one stroke for all class members. *See Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254 (9th Cir. 2018) (reversing denial of class certification where underlying legal standard was objective, not subjective). And district courts applying *Calhoun* have recognized as much: "the issue of how a reasonable user would understand [defendant's] privacy

policies is a common one that can be resolved with class-wide proof." *Torres v. Prudential Financial, Inc.*, 2024 WL 4894289, at *7 (N.D. Cal. Nov. 26, 2024); *see also Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 581–82 (N.D. Cal. 2025) (citing *Calhoun*, 113 F.4th at 1147) (explaining that consent "does not turn on individual class members' subjective understandings of privacy disclosures" and "is not a bar to predominance"); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1103 (N.D. Cal. 2025) (holding consent test asks "whether a reasonable user reading [the disclosures] would think that he or she was consenting to the data collection").

Far from a "diversity of disclosures," Order at 11, the record here contains only two disclosures that purport to describe Capital One's data practices—its Privacy Policy and, for California residents, the CCPA notice. And the district court already concluded that the Privacy Policy "does not state that it releases that customer's personal information such as employment information and credit card preapproval or approval status." Dkt. 59 at 6. If Capital One's disclosures failed to convey that information, then they failed for everyone. But the district court instead ignored *Calhoun* and treated consent as though it turned on each class member's subjective understanding. That is the opposite of the objective inquiry *Calhoun* requires, and it is exactly the kind of manifest error warranting interlocutory review. *Chamberlan*, 402 F.3d at 959.

***Second***, having disregarded the correct legal standard, the district court compounded its error by imagining individualized consent issues that Capital One never proved existed. To defeat predominance based on consent—an affirmative defense—Capital One had to "provide sufficient evidence that the individualized issues bar recovery on at least some claims, thus raising the spectre of class-member-by-class-member adjudication of the issue." *Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023). Courts cannot deny certification based on hypothetical defenses unsupported by the record. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018) ("[W]e do not consider . . . defenses that [the defendant] might advance or for which it has presented no evidence.").

Rather than holding Capital One to its burden, the district court embraced the very speculation *McKesson* prohibits. It thought that consent required a user-by-user inquiry into the "various sources each individual user had been exposed" to. Order at 11. But even accepting that mistaken legal premise, there is no evidence that any class member was exposed to any source beyond the two disclosures in the record.[2] Neither disclosure tells consumers that Capital One deployed third-party tracking technologies, what information those technologies collected, how it was transmitted,

[2] That also makes inapposite the cases the district court relied on, where the defendant offered evidence that the class was exposed to potentially different notices. *See Calhoun v. Google LLC*, 349 F.R.D. 588, 596–97 (N.D. Cal. 2025); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *16 (N.D. Cal. Mar. 18, 2024).

or to whom it was sent. And as noted earlier, the district court itself recognized that Capital One's Privacy Policy does not disclose the challenged data-sharing practices. Dkt. 59 at 6. Likewise, Dr. Egelman, who the district court ignored, explained that although the Privacy Policy promises to share only "aggregated and de-identified information," the data actually transmitted was "clearly neither aggregated nor de-identified: it is very clearly personally identifiable!" Dkt. 187-15, ¶ 198.

The district court thus ignored the only evidence in this record on the issue—which showed consent could be proven on a classwide basis—and instead found an individualized consent issue that Capital One had the burden—but offered no evidence—to establish. *McKesson* forbids exactly that. 896 F.3d at 932.

### B. The district court abandoned Rule 23's rigorous analysis by disregarding common evidence, ignoring the experts, and inventing individualized issues.

Rule 23 demands "rigorous analysis" of the record—not selective reliance on tidbits or wholesale disregard of expert evidence. *Dukes*, 564 U.S. at 351–52. That means considering "all relevant evidence and arguments," including "expert testimony, whether offered by a party seeking class certification or by a party opposing it." *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 191 (3d Cir. 2020); *see also Sali*, 909 F.3d at 1006 (reversing denial of class certification where "the district court unnecessarily excluded proof that tended to support class certification"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)

(holding district court's failure to "judg[e] the persuasiveness of the evidence presented" is "error").

The predominance element focuses on whether liability can be established through common proof of a defendant's common conduct. It is therefore "often satisfied" when the "defendant has implemented a class-wide scheme, policy, or practice." *Cline v. Sunoco, Inc (R&M)*, 159 F.4th 1171, 1187–88 (10th Cir. 2025); *see also DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1234–35 (9th Cir. 2024) (explaining fraud scheme with "common course of conduct" or "centrally orchestrated strategy" readily satisfy predominance). Consistent with that principle, Judge Donato granted class certification in a similar tracking-technology case based on the testimony of the very same expert the district court ignored here, Dr. Egelman, who showed that "the type and substance of information capable of being entered and tracked were consistent." *Frasco*, 349 F.R.D. at 572.

The undisputed record here established exactly that. Dr. Egelman demonstrated—through his own independent testing—that Capital One deployed the challenged technologies on the same webpages, configured them the same way, and used them to transmit the same categories of information to the same third parties.[3]

[3] The district court's reliance on *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *10 (C.D. Cal. Sep. 9, 2024), was misplaced. There, TikTok's tracker appeared on thousands of third-party websites, and plaintiffs sought to hold TikTok liable for how others deployed it. Here, by contrast, Dr. Egelman's unchallenged and unrebutted analysis established that Capital One itself uniformly deployed the

The district court reached the opposite conclusion only by ignoring this evidence. It neither evaluated Dr. Egelman's opinions nor explained why they failed to establish predominance. Instead, it declared that Plaintiff failed to show "that Capitol [*sic*] One transmitted each category of 'personal and financial data' for each putative class member in a uniform manner to third-parties." Order at 10. But Dr. Egelman's opinion showed exactly that, and there was no reason to ignore it. Capital One, for its part, never challenged Dr. Egelman's opinion under *Daubert*, so its admissibility was never in dispute. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666 (9th Cir. 2022) (*en banc*). And Rule 23 requires the district court to weigh the evidence, not disregard it. *Sali*, 909 F.3d at 1006; *Ellis*, 657 F.3d at 982. Had it properly done so, it would have seen that Capital One deployed the challenged technologies the same way, on the same webpages, to collect and transmit the same categories of information to the same third parties. A district court cannot manufacture predominance problems by gerrymandering the record. And the district court's refusal to grapple with this unrebutted evidence is precisely the kind of disregard for "credible evidence in the record" that constitutes "manifest error," warranting Rule 23(f) review. *In re District of Columbia*, 792 F.3d 96, 98 (D.C. Cir. 2015).

---

challenged technologies on just four Capital One webpages, all governed by the same two disclosures.

Piling error upon error, the district court also demanded proof Rule 23 has never required: that every class member's data transmission contained precisely the same fields. Order at 10. But Plaintiff need not prove that every transmission is identical any more than fraud plaintiffs must prove every oral misrepresentation was verbatim. *In re First Alliance Mortgage Co*., 471 F.3d at 991. The relevant inquiry is whether the challenged course of conduct is susceptible to common proof. *See DZ Reserve*, 96 F.4th at 1235.

The district court's contrary rule would create a roadmap for defeating class action tracking technology cases. A company could uniformly deploy tracking technologies, fail to preserve its transmissions, and then argue that certification must be denied because plaintiffs cannot reconstruct every historical transmission. Rule 23 does not reward such blatant gamesmanship. Where, as here, the evidence shows uniform deployment and uniform configuration designed to transmit the same categories of information, predominance is readily satisfied. *Frasco*, 349 F.R.D. at 572.

More fundamentally, the district court's concern about a variation in the data transmitted between class members "is . . . not the type of individual question that defeats predominance." *In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *13 (N.D. Cal. Sep. 30, 2025). "Once a factfinder settles on which categories of data are offensive and which are not (a common issue not depending on individual

circumstances), determining injury becomes a 'plug-and-play' exercise in matching up exposed [] data elements to those categories." *Id.* (quoting *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1226 (9th Cir. 2024)). "So, if there is a way to generate a spreadsheet identifying the specific categories of data disclosed by class member, there are no predominance problems." *Id.*; *see also Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016) (no predominance or manageability barrier to certification where the district court can "winnow out [] non-injured [plaintiffs] at the damages phase of the litigation").

Here, Capital One maintained spreadsheets identifying the information transmitted through its tracking technologies, making it straightforward to identify class members once the court determines which categories of information were unlawfully disclosed. *See Ruiz Torres*, 835 F.3d at 1137. The district court ignored that evidence, instead perceiving individualized issues where the record showed an administrable, common methodology. By doing so, the district court, once more, departed from settled law. *Sali*, 909 F.3d at 1006.

Even if the district court had identified some differences among class members, Rule 23 is designed to accommodate variation. "[C]lass certification is not an all-or-nothing proposition." *Simpson v. Dart*, 23 F.4th 706, 713 (7th Cir. 2022). "[T]he district court may elect to separate the class into subclasses, or adjust the scope of the class definition." *Ruiz Torres*, 835 F.3d at 1139. "What a district court

may not do is to . . . decline to certify the class on the basis of a mere potentiality that may or may not be realized." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 810 (9th Cir. 2010).

### C. The district court erred in concluding that standing requires individualized proof.

Finally, the district court's standing analysis repackages the same error. It held that Article III standing requires individualized inquiries into "what, if any, data was shared, how that data was shared, for what purpose the data was shared, and the nature of that data shared with respect to each plaintiff." Order at 12.

But, as demonstrated earlier, Plaintiff presented common proof answering each of those questions. Dr. Egelman explained that Capital One uniformly deployed and configured the challenged technologies on the same webpages, that they operated in a standardized manner, and that they were capable of transmitting the same categories of information to the same third parties. Dkt. 187-15, ¶¶ 193–96. In addition, Capital One's standardized tables identify the categories of information transmitted through its tracking technologies, easily permitting the court to determine, on a classwide basis, what information was disclosed and whether disclosure of those categories constitutes a concrete privacy injury. *See In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *13. The district court's

contrary conclusion thus rests on the same flaw that infects the rest of its order: it ignored, without explanation, the common proof before it. *Ellis*, 657 F.3d at 982.

The district court's standing analysis also cannot be reconciled with its own prior ruling. Earlier, it held that Plaintiff adequately alleged a concrete injury because Capital One disclosed "first and last names, email addresses, and phone numbers, along with other information, like whether their application was approved or what type of credit card they applied for and supposedly obfuscated FICO segments and income band." Dkt. 304 at 12. If transmitting those categories of information constitutes a concrete Article III injury for one consumer, then it must also for at least every consumer whose same information was transmitted. And here, that can be determined across the class using Capital One's own records. Contrary to the district court's conclusion, then, standing rises or falls on the common question of what categories of information Capital One transmitted, not on individualized inquiries into each class member's circumstances.

Last, the standing analysis suffers from an even more fundamental flaw: the district court never conducted the claim-by-claim inquiry Article III requires. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Garmong v. Tahoe Reg'l Plan. Agency*, 806 F. App'x 568, 571 (9th Cir. 2020). Instead, the district court erroneously grafted the "highly offensive" element of Plaintiff's dismissed common-

law privacy claim onto its standing analysis for every remaining claim, including statutory claims that impose no such requirement.

That error was especially consequential for Plaintiff's unjust-enrichment claim. Under *In re Facebook, Inc. Internet Tracking Litigation*, Plaintiff suffers a concrete injury if Capital One wrongfully obtained and monetized the economic value of her personal information. 956 F.3d 589, 600 (9th Cir. 2020). That injury is inherently a common one. If Capital One uniformly collected and monetized class members' personal information without consent, every class member shares the same economic injury and the same entitlement to disgorgement. Plaintiff's damages expert developed a classwide model measuring precisely that injury, including the value of the information appropriated, Capital One's resulting enrichment, and the costs imposed by the disclosure. ECF No. 187-53, ¶¶ 157–61. The district court did not address Mr. Krause's unrebutted expert analysis. Thus, its one-size-fits-all analysis, which disregarded this information, falls short of the claim-specific analysis that Article III requires.

### D. The district court ignored Plaintiff's request for a Rule 23(b)(2) class.

Plaintiff sought certification under both Fed. R. Civ. P. 23(b)(2) and (b)(3). Rule 23(b)(2) "does not require [courts] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them."

*Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). "[I]t is sufficient to meet the requirements of Rule 23(b)(2) that class members complain of a pattern or practice that is generally applicable to the class as a whole." *Id.* The district court tacitly recognized Capital One's pattern or practice, yet it denied certification based solely on predominance concerns—even though "no such requirement exists under Rule 23(b)(2)." *See Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 937–38 (9th Cir. 2019). Whether the district court overlooked Plaintiff's Rule 23(b)(2) request or mistakenly believed its predominance analysis resolved both certification theories, the result is the same: the court failed to apply the governing legal standard and therefore, again, manifestly erred.

## II. THE PETITION PRESENTS FUNDAMENTAL ISSUES OF LAW RELATING TO CLASS ACTIONS, IMPORTANT BOTH TO THIS LITIGATION AND GENERALLY.

The district court's denial of class certification also warrants immediate review because it presents "unsettled and fundamental issue[s] of law" with consequences far beyond this case. *Chamberlan*, 402 F.3d at 959. The court held that predominance turns on each class member's subjective understanding of standardized disclosures, that minor variations in transmitted data defeat common proof, and—most troublingly—that a court may disregard unrebutted expert evidence establishing the defendant's uniform conduct. If those are the rules, then Rule 23 will become unavailable in precisely the cases for which it was designed, "a

result inconsistent with the efficiency aims of Rule 23." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 421 (5th Cir. 2004).

On top of directly contradicting this Court's precedent, the district court's holding, if widely adopted, would "sound the death-knell" not only of this class action, but "of the class action device" itself in any case involving privacy claims and beyond. *Leyva*, 716 F.3d at 514. Under the district court's approach, any defendant could defeat certification by simply refusing to preserve complete records, speculating that consumers may have understood standardized disclosures differently, or pointing to immaterial differences in defendant's data retention generated by a uniform technological system. Common evidence of the defendant's conduct—including unrebutted expert testimony—would no longer matter. That approach turns Rule 23 on its head. Predominance determines whether common evidence can resolve the central issues arising from a defendant's uniform conduct, not to reward speculation about hypothetical individual differences. *See DZ Reserve*, 96 F.4th at 1235. Left undisturbed, the decision would leave companies free to send even the most private online communications, like information provided while applying for a credit card, to third parties without permission—with impunity.

Nor would the consequences end there. Consumer protection cases routinely challenge uniform marketing campaigns, standardized disclosures, or common business practices that affect consumers in different ways. *See Noohi v. Johnson &*

*Johnson Consumer Inc.*, 146 F.4th 854, 856 (9th Cir. 2025) (affirming grant of class certification in deceptive marketing case). Data breach cases likewise involve a single security failure that exposes different categories of information belonging to different class members. *See In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *13 (granting class certification despite variation in class members' stolen data). If routine differences in the information associated with each class member defeat predominance, then Rule 23 would cease to function in many of the very cases for which it was designed. The predictable result would be to insulate widespread misconduct from meaningful review because no individual claim would ever justify the cost of litigation.

Interlocutory review is also needed because, without it, the district court's order effectively ends this litigation. The claims of absent class members are economically irrational to pursue individually, making the denial of certification the practical equivalent of dismissal. *Chamberlan*, 402 F.3d at 957.

For these reasons, this district court's order presents "fundamental issue[s] of law relating to class actions, important both to the specific litigation and generally." *Id.* at 959. Immediate guidance is needed to reaffirm that Rule 23 requires courts to decide certification based on the record before them, including unrebutted expert evidence, not on hypothetical individualized issues that the evidence never establishes.

## CONCLUSION

This Court should grant the petition for permission to appeal.

Dated: June 30, 2026

Respectfully submitted,

*/s/ Lesley E. Weaver*

Lesley E. Weaver
Anne K. Davis
STRANCH, JENNINGS & GARVEY, PLLC
1111 Broadway, Suite 300
Oakland, CA 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

J. Gerard Stranch IV
Michael C. Iadevaia
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com
miadevaia@stranchlaw.com

Lynn A. Toops
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
ltoops@cohenmalad.com

*Counsel for Plaintiff-Petitioner*

## CERTIFICATE OF COMPLIANCE

This petition complies with the page-volume limitations set out in Ninth Circuit Rules 5-2(b) and 32-3 because it is 5,130 words. This petition complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Lesley E. Weaver*
Lesley E. Weaver

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2026, electronically I filed the foregoing petition with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the ACMS system. All counsel consented in writing to electronic service via email. I caused the petition to be emailed to the following people:

Kathryn E. Cahoy
kcahoy@cov.com

Matthew Q. Verdin
mverdin@cov.com

Andrew Soukup
asoukup@cov.com

Nicholas Evoy
nevoy@cov.com

Marianne Spencer
mspencer@cov.com

Jeffrey Huberman
jhuberman@cov.com

*/s/ Lesley E. Weaver*
Lesley E. Weaver

# EXHIBIT A

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY INGRAHAM, et al.,<br>Plaintiffs,<br>v.<br>CAPITAL ONE FINANCIAL CORPORATION,<br>Defendant. | Case No. 24-cv-05985-TLT<br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION**<br>Re: Dkt. No. 186 |

Before the Court are (1) Defendant's motion to strike the opinions and testimony of Eric Krause, (2) Defendant's motion to strike the opinions and testimony of Kinshuk Jerath, (3) Plaintiff's motion to exclude the opinions and testimony of Lorin Hiit, (4) Plaintiff's motion to strike the opinions and testimony of Ronald Schnell, (5) Plaintiff's motion to strike the opinions and testimony of Kirk Fair, and (6) Plaintiff's motion for class certification.

Having considered Defendant's motion, the record, the relevant legal authority, and for the reasons below, the Court **DENIES** Plaintiff's motion for class certification and **DENIES** the related *Daubert* motions to exclude expert evidence as **MOOT**.

For purposes of this Order, Court assumes the parties' familiarity with the factual background and claims articulated in the parties' filings and in the Court's order on Defendant's motion to dismiss. Below, the Court recites facts relevant for resolution of the pending motions.

## I. BACKGROUND

Defendant is a financial institution that provides financial services across the United States and internationally. Compl. ¶ 2. Defendant used a website that allowed customers to access their account, financial services, and apply for "financial products like credit cards." *Id.* Defendant's website allegedly contained "invisible Third-Party online tracking technologies" that

"instantaneously and surreptitiously duplicate[d] communications with that webpage and sen[t] them to the Third Party." *Id*. ¶¶ 41–42. The information travels directly from both the user's browser and the webpage owner's server and then on to the Third Party's server, based off instructions from the Third Party's tracker. *Id.*

These communications included Plaintiffs' and Class Members' (1) employment information; (2) bank account information; (3) citizenship and dual citizenship status; (4) credit card preapproval and eligibility; (5) credit card approval and eligibility; (6) existing user, or Customer, status; (7) browsing activities, including viewed pages and content; (8) credit card application status; and (9) other information collected through an internet "cookie." *Id.* ¶ 187. Defendant used this information for third and fourth parties' marketing and sales. *Id.* ¶ 47.

The trackers on Defendant's website came from Google, Microsoft, DoubleClick, New Relic, Adobe, Everest, Skai/Kenshoo, Snowplow, Biocatch, Tealium, and Facebook/Meta Pixel. *Id.* ¶ 51. Facebook, for instance, tracked users and the type of actions they took on Defendant's website and used this information to "find new customers, drive sales, and understand ad impact." *Id.* ¶ 48.

When a customer uses Defendant's website, Facebook would get an event informing it about the user's activity. *Id.* ¶ 68. Defendant's website transmitted to Facebook the specific page viewed by the customer, the customer's IP address, cookies, and personal and financial information. *Id.* ¶ 76. Similarly, Google trackers allowed "Defendant to track and share with Google (1) who use[d] Capital One's website; (2) what [was] performed on the website; (3) when users visit[ed] the website; (4) where on the website users perform[ed] these actions; and (5) how users navigate[d] through the website to perform these actions." *Id.* ¶ 52. Defendant used these trackers since at least November 30, 2023, and as recently as June 24, 2024. *Id.* ¶ 61.

Similarly, Plaintiff Ingraham does not have an account with Defendant but used Defendant's website to apply for Defendant's credit card. *Id.* ¶ 165. He was not approved, but still received advertisements from Discover Cards, Chase, and Chime on his Facebook feed. *Id.* ¶¶ 166, 169–71.

Finally, Plaintiff Williams applied for a credit card with Defendant, was not approved, and was "constantly bombarded with credit card advertisements on Facebook," leading her to block Defendant on social media. *Id.* ¶¶ 173–74, 177.

All Plaintiffs allege that they did not sign any written authorization permitting Defendant to send their personal and financial information to third or fourth parties. *Id.* ¶ 181. Instead, Plaintiffs "reasonably expected that their communications with [Defendant] were confidential, solely between each Plaintiff and [Defendant]." *Id.* ¶ 182.

On August 26, 2024, Plaintiffs filed a complaint and alleged the following: (1) negligence; (2) negligence per se; (3) invasion of privacy under the California Constitution; (4) violation of the Comprehensive Computer Data Access and Fraud Act ("CDAFA"); (5) violation of the Unfair Competition Law ("UCL"); (6) violation of the California Consumer Privacy Act ("CCPA"); (7) violation of the California Customer Records Act ("CRA"); (8) breach of express and implied contract; (9) unjust enrichment; (10) bailment; (11) declaratory judgment; (12) breach of confidence; (13) violation of the California Invasion of Privacy Act ("CIPA"); (14) violation of the Federal Wiretap Act, Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1); (15) violation of the ECPA, 18 U.S.C. § 2511(3)(a); (16) violation of Title II of the Electronic Communications Privacy Act ("Stored Communications Act"); and (17) violation of the Computer Fraud and Abuse Act ("CFAA"). Compl. ¶¶ 214–421.

On March 6, 2026, Defendant filed a motion to dismiss for lack of jurisdiction. ECF 219. The Court denied Defendant's motion to dismiss with respect to Plaintiff Williams; thus, the following claims survive: negligence (Count 1); violation of the CCPA (Count 6); unjust enrichment (Count 9); violation of the CIPA (Count 13); and violation of ECPA (Counts 14 and 15). ECF 304.

Plaintiff seeks to certify four classes:

> ***Server-to-Server Technology Class***: All Capital One website users who submitted a credit card application on http://www.applynow.capitalone.com from September 1, 2022 to present and had personally identifiable information collected or transmitted via any server-to-server technology, including Meta Conversions API, Google UserProvided Data Matching, Google Ads Data Hub, or SkaiFTP.

> ***Server-to-Server Technology California Subclass***: All citizens of California who submitted a credit card application on http://www.applynow.capitalone.com from September 1, 2022 to present and had personally identifiable information collected or transmitted via any server-to-server technology, including Meta Conversions API, Google User-Provided Data Matching, Google Ads Data Hub, or Skai FTP.
>
> ***Tracking Tags Classes***: All Capital One website users who submitted an application on http://www.applynow.capitalone.com, http://www.capitalone.com/creditcards/ preapprove, or http://www.capitalone.com/apply/credit-cards/preapprove from August 26, 2020 to present and had personally identifiable information collected or transmitted via Adobe Analytics, Google Analytics, Google marketing tags, or the Meta Pixel.
>
> ***Tracking Tags California Subclass***: All citizens of California who submitted an application on http://www.applynow.capitalone.com, http://www.capitalone.com/ creditcards/preapprove, or http://www.capitalone.com/apply/credit-cards/preapprove from August 26, 2020 to present and had personally identifiable information collected or transmitted via Adobe Analytics, Google Analytics, Google marketing tags, or the Meta Pixel.

## II. MOTION FOR CLASS CERTIFICATION

### A. Legal Standard for Class Certification

Before it can certify a class, a district court must be "satisfied, after a rigorous analysis, that the prerequisites" of Federal Rule of Civil Procedure 23 have been satisfied. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664–65 (9th Cir. 2022) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

Rule 23 consists of two parts. Fed. R. Civ. P. 23. First, Plaintiff must satisfy all four requirements of Rule 23(a): "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Olean*, 31 F.4th at 663; Fed. R. Civ. P. 23(a). Second, Plaintiff must demonstrate through evidentiary proof that

the class satisfies at least one of the three subsections under Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Classes certified under Rule 23(b)(3) require that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). For example, to determine whether a common question prerequisite is satisfied, "a district court is limited to resolving whether the evidence establishes that a common question is capable of classwide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666–67.

## III. DISCUSSION

Defendant argues that (1) Plaintiff does not identify a common question of fact and (2) individual questions predominate the class. ECF 215-1 at 17. Plaintiff argues that the question of what information was shared without consent satisfies the commonality requirement of Rule 23(a) and argues that individualized questions of proof do not predominate either the statewide or nationwide classes. ECF 259-1 at 8–20.

### A. Plaintiff's Classes Present No Choice of Law Issue

After Defendant made an objection to the application of California law to the nationwide class "Plaintiffs limit[ed] their nationwide classes to the federal ECPA claim" and Plaintiff further state that they "will pursue negligence and unjust enrichment only on behalf of the California subclasses" ECF 258 at 9. Plaintiff later clarified that Plaintiff limits its California statutory claims (CIPA and CCPA) to the California subclasses. ECF 287. Plaintiff's limitations defeat any choice of law issues which might have otherwise arisen with the nationwide class.

Accordingly, Plaintiff must make specific showings to certify the proposed nationwide class certification pursuant to the ECPA. The ECPA "prohibits unauthorized 'interception' of an

'electronic communication.'" *Meta Platforms*, 690 F. Supp. 3d at 1075 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606–07). The one-party consent exemption provides that it is not unlawful for "a person not acting under color of law to intercept a wire, oral, or electronic communication" when that person is a party to the communication "or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted" to commit a crime or tort. 18 U.S.C. § 2511(2)(d).

Plaintiff's California subclasses require separate showings based on California law. "To state a claim for negligence in California, a plaintiff must establish the following elements: (1) the defendant had a duty, or an 'obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks,' (2) the defendant breached that duty, (3) that breach proximately caused the plaintiff's injuries, and (4) damages." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038–39 (N.D. Cal. 2019) (internal citations omitted).

The CCPA provides a limited civil cause of action for any "consumer whose nonencrypted and nonredacted personal information… is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security practices." Cal. Civ. Code § 1798.150(a)(1). Under the CCPA, "[a] third party shall not sell or share personal information about a consumer that has been sold to, or shared with, the third party by a business unless the consumer has received explicit notice and is provided an opportunity to exercise the right to opt-out." *Id.* § 1798.115.

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received an unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023).

Finally, California Penal Code § 631(a)(2) applies to anyone who:

> (2) willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message ... while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state

Section 637.2 provides a civil cause of action for damages or an injunction to anyone "injured by a violation of this chapter . . . against the person who committed the violation . . . [.]" Cal. Pen. Code § 637.2. Section 632 punishes a person who "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Cal. Pen. Code § 632(a).

Because Plaintiff limits the federal claims to the nationwide class and the state law claims to the California class, no choice of law issue is present.

**B. Numerosity**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The party seeking certification "do[es] not need to state the exact number of potential class members, nor is a specific number of members required for numerosity." *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). Courts in this district generally agree that numerosity is satisfied if the class includes "40 or more members." Furthermore, numerosity is satisfied "where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large." *Pardi v. Tricida, Inc.,* No. 21-cv-00076, 2024 WL 4336627, at *4 (N.D. Cal. Sept. 27, 2024)

The Court may properly conclude that numerosity is satisfied because, based on the number of credit card applications Capital One received during the Class Period, the number of plaintiffs is likely to exceed the threshold amount courts generally find satisfy numerosity. *See* ECF 187-1 at 20 (Plaintiffs allege that August 2021 to August 2024 Capital One received millions of credit applications)*; Villalpando v. Exel Direct Inc.*, 303 F.R.D. at 605–06 (finding numerosity satisfied with 40 or more plaintiffs); *see also In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012) ("[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members").

Accordingly, the court finds that Plaintiff satisfies the numerosity requirement of Rule 23(a)(1).

**C. Commonality & Predominance**

Courts have found it appropriate to assess Rule 23(a)(2) commonality and Rule 23(b)(3)

predominance together. *In re Capacitors Antitrust Litig. (No. III)*, No. 14-CV-03264, 2018 WL 5980139, at *3 (N.D. Cal. Nov. 14, 2018) (citing *See*, *e.g.*, *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120-21 (9th Cir. 2017)); *see also Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 574 (N.D. Cal. 2025); *White v. Symetra Assigned Benefits Serv. Co*., 104 F.4th 1182, 1191 (9th Cir. 2024) (citing *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods* LLC, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) ("The commonality and predominance inquiries overlap."). Thus, after separating questions common to the legal claims of the class from those that "present individualized issues," courts "analyze whether the common questions predominate over the individual questions." *DZ Rsrv. v. Meta Platforms*, Inc., 96 F.4th 1223, 1233 (9th Cir. 2024). In essence, this inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. (a)(2). "A common contention need not be one that 'will be answered, on the merits, in favor of the class.' It only 'must be of such nature that it is capable of class-wide resolution.'" *Alcantar v. Hobart Servs.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (quoting *Amgen*, 568 U.S. at 459 and *Dukes*, 564 U.S. at 350). At the center of this inquiry is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. "[A]s in all class actions, commonality cannot be determined without a precise understanding of the nature of the underlying claims." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014). Plaintiffs need not show, however, that "every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir.2013) (quoting *Dukes*, 564 U.S. at 359, 131 S.Ct. 2541)

The predominance inquiry of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Accordingly, the predominance analysis "focuses on the relationship between the

common and individual issues in the case." *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, 545 (9th Cir.2013) (internal quotation marks omitted); *see also In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 571 F.3d 953, 958 (9th Cir.2009) ("Whether judicial economy will be served in a particular case turns on close scrutiny of the relationship between the common and individual issues." (internal quotation marks omitted)). "[I]f the discovery and trial process must assess thousands of claims one claim at a time, then the individualized issue will weigh heavy in the predominance balancing." *In re Meta Pixel Tax Filing Cases Meta Platforms, Inc.*, No. 22-CV-07557, 2026 WL 1025741, at *10 (N.D. Cal. Mar. 30, 2026) (citation omitted).

**i. Assessing the Information Shared by the Tracking Technologies Raises a Common Question, but Requires Individualized Proof**

Capital One argues that class certification is not appropriate because there is no uniform set of information sent across all eight technologies every time an application is submitted, and the specific information transmitted via a specific technology may vary from class member to class member. ECF 215-1 at 16. Plaintiff argues that Capital One uniformly deployed a broad ecosystem of tracking technologies on its preapproval and application webpages such that all class members for whom that technology was enabled suffered the same injury. ECF 259-1 at 8. Moreover, Plaintiff argues that the type and substance of information capable of being entered and tracked were consistent among class members. *Id.* at 9.

Where "the viability of each class member's claims turns on the contents of the information collected from his or her browsing activity, which in turn depends on" other individualized factors, "questions affecting individual class members would predominate over common questions." *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *10 (C.D. Cal. Sept. 9, 2024)

Plaintiff identifies 12 categories of data that constitute "personal and financial data" which give rise to their causes of action. ECF 187-1 at 14–16. These included hashed names, hashed email addresses, hashed phone numbers, obfuscated banded FICO scores, obfuscated banded income segments, citizenship status, country of origin, employment status, type of bank account, type of credit card, obfuscated value of credit card to Capital One, and the results of the application process. *Id.* However, consumers various browsing habits and browser settings can



United States District Court
Northern District of California

influence what information is shared and when. Moreover, not every application Plaintiff submitted resulted in a transmission of information via the technologies at issue. *See* Ager Decl. ¶¶ 16, 21, 55; Morawetz Decl. ¶¶ 13, 16; Trowbridge Decl. ¶¶ 13-14, 16, 43, 45-47. The parties dispute which information was shared regarding even the named Plaintiff in this action; individualized inquiries would be needed to determine whether and, if so, what information was sent for any particular individual through a particular technology. ECF 287. Unlike claims that would apply to all prospective plaintiffs on a classwide basis, Plaintiff's privacy claims here depend on an individualized assessment of each prospective plaintiffs' interactions with the tracking technology and the amount and type of information included on their credit card application. *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) ("Claims under the UCL and FAL are ideal for class certification because they will not require the court to investigate class members' individual interaction with the product.")

Having not shown that Capitol One transmitted each category of "personal and financial data" for each putative class member in a uniform manner to third-parties, Plaintiff has not demonstrated that common questions predominate individual inquiries.

**ii. Consent Requires Individualized Proof**

Plaintiff argues that the consent inquiry does present a predominance issue because the disclosures occurred according to a uniform privacy policy and because the disclosures' inadequacies apply to all class members. ECF 259-1 at 10–13. Defendant argues that consent presents individualized questions that defeat predominance because class members were exposed to a mix of disclosures and developed different understandings of those disclosures. ECF 215-1 at 20–22.

Courts recognize that the consent inquiry focuses on "a user's subjective understanding of the terms of the relevant agreement" and accounts for "a broad set of materials." *Calhoun v. Google LLC*, 349 F.R.D. 588, 597 n.3 (N.D. Cal. 2025) (emphasis added) (denying certification on consent grounds); *see also In re Google Inc. Gmail Litigation,* 2014 WL 1102660, at *16 (N.D. Cal. Mar. 18, 2014) (denying class certification for class which included CIPA and ECPA claims because consent is an "intensely factual question" requiring "consideration of the circumstances"

"to divine whether the party whose [data] was intercepted was on notice that the [data] would be intercepted.").

Here, in order to submit an application with Capital One, each putative class member agreed to Capital One's privacy policy. ECF 215-1 at 20. Moreover, depending on whether the applicant resides in California, that applicant will receive additional disclosures. ECF 214 at 73. Whether inquiring into class members express or implied consent, individualized questions of fact will predominate over common questions. For express consent, the Court would need to grapple with the "diversity of disclosures" that putative class members were exposed to. *In re Google Inc. Gmail Litigation,* 2014 WL 1102660, at *15. Any inquiry into implied consent would require the Court to "evaluate to which of the various sources each individual user had been exposed and whether each individual knew about and consented to the interception based on the sources to which she was exposed." *Id.* (citation omitted).

Accordingly, the Court finds that the issue of consent requires individualized inquiries that will overwhelm any common questions.

**iii. Standing Requires Individualized Proof**

The Supreme Court has not yet decided whether a class may be certified under Rule 23(b)(3) when the class includes both injured and uninjured class members. *See Lab'y Corp. of Am. Holdings v. Davis*, 145 S. Ct. 1608 (2025) (dismissing writ of certiorari on this issue as improvidently granted). In the Ninth Circuit, a class may be certified where the plaintiff has demonstrated a method of proof that is capable of showing harm on a class-wide basis, even if the class potentially includes more than a de minimis number of uninjured class members. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods* LLC, 31 F.4th 651, 669, 681 (9th Cir. 2022).

Plaintiff argues that *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) requires that unnamed class members show standing only after certification. ECF 259-1 at 13. However, "although *TransUnion* calls into question whether courts at the class certification stage should assess the standing of putative class members, it ultimately provides no basis for this Court to disregard binding Ninth Circuit law on point." *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1182 (N.D. Cal. 2023), *opinion clarified*, No. 17-cv-03962, 2024 WL 3498492

(N.D. Cal. July 22, 2024) (citing *Lauderdale v. NFP Ret., Inc.*, No. SA-cv-2:13-01, 2022 WL 1599916, at *4 (C.D. Cal. Feb. 16, 2022)) ("Nothing in *TransUnion* indicates that it changed settled Ninth Circuit law regarding what it is required to demonstrate standing at the class certification stage."). Thus, the Court must determine whether Plaintiff has presented a method of proof capable of showing harm on a class-wide basis. *King v. Nat'l Gen. Ins. Co.*, No. 15-cv-00313, 2025 WL 2021884, at *2 (N.D. Cal. July 18, 2025).

The Court finds that Plaintiff has not. The Court's written Order on May 22, 2026 is illustrative on this point. There, the Court found that one named plaintiff could demonstrate Article III standing in alleging that personal and financial data which Plaintiff Williams had demonstrated an actual expectation of privacy in was transmitted using Defendant's tracking technology, while another, Plaintiff Ingram, had not demonstrated an expectation of privacy in their date. ECF 304. The Court would need to engage in this same, fact-intensive inquiry for each prospective plaintiff. That is, the Court would need to determine what, if any, data was shared, how that data was shared, for what purpose the data was shared, and the nature of that data shared with respect to each plaintiff. Plaintiff has not demonstrated a method for answering those questions on a classwide basis sufficient to satisfy Rule 23's predominance requirement. *See Ambrosio v. Progressive Preferred Ins. Co*., 154 F.4th 1107, 1112 (9th Cir. 2025) (holding that Circuit has also held that common issues do not predominate where "figuring out whether each individual putative class member was harmed would involve an inquiry specific to that person.").

As noted in the Court's May 22, 2026 Order, the standing analysis applies to Plaintiff's statutory and common law claims. ECF 304 at 6 (citing *Krzyzek v. OpenX Techs., Inc.*, No. 25-cv-05588, 2026 WL 206855, at *3 (N.D. Cal. Jan. 27, 2026) (analyzing Article III standing as a threshold issue on all claims where plaintiffs brought a putative class action for common law privacy claims, unjust enrichment, violations of CIPA, and ECPA)). Thus, the Court's finding that class certification is inappropriate in this action due to individualized inquiries of standing applies to both Plaintiff's California and nationwide classes.

Accordingly, the Court finds that issues of Article III standing provide an additional ground for denying class certification here.

* * *

For the reasons discussed above, the Court finds that Plaintiff has not met the predominance requirement of Rule 23(b)(3) to certify a nationwide or statewide class.

## IV. CONCLUSION

For the reasons stated above, the Plaintiff's motion for class certification is **DENIED**. The Court **DENIES** as **MOOT** the related *Daubert* motions to exclude expert evidence. *In re Meta Pixel Tax Filing Cases Meta Platforms, Inc.*, No. 22-cv-07557, 2026 WL 1025741, at *12 (N.D. Cal. Mar. 30, 2026); *see also Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 861 (N.D. Cal. 2020).

The Court **GRANTS** the parties' joint administrative motion to modify the case management and scheduling order. Dispositive motions are due September 18, 2026. Any opposition is due October 9, 2026. Any reply is due October 30, 2026. The dispositive motion hearing date is continued to November 17, 2026, at 2:00 pm.

A further case management conference is set for June 25, 2026, 2:00p.m. via videoconference. A joint case management statement is due June 18, 2026.

This Order resolves ECF 186, 223, 242, 246, 248, 250, and 305.

IT IS SO ORDERED.

Dated: June 16, 2026

TRINA L. THOMPSON
United States District Judge