**No. 26-4182**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

DEIA WILLIAMS,

*Plaintiff-Petitioner*,

v.

CAPITAL ONE FINANCIAL CORPORATION,

*Defendant-Respondent*.

On Petition for Permission to Appeal from the
United States District Court for the Northern District of California
No. 3:24-cv-05985-TLT before the Hon. Trina L. Thompson

# CAPITAL ONE'S OPPOSITION TO PLAINTIFF'S PETITION FOR REVIEW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

Kathryn E. Cahoy
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4735

Matthew Q. Verdin
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-7065

Andrew Soukup
Marianne Spencer
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000

*Attorneys for Defendant-Respondent Capital One Financial Corporation*

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................ 1

STATEMENT OF THE CASE ........................................................................ 3

STANDARD OF REVIEW .............................................................................. 8

ARGUMENT ................................................................................................ 8

I. The Order Denying Class Certification Is Not "Manifestly Erroneous." ........................................................................................... 8

A. The District Court Did Not Abuse Its Discretion in Deciding That Assessing the Information Shared (If Any) About Each Class Member Requires Individualized Proof. ................................. 10

B. The District Court Did Not Abuse Its Discretion in Deciding That Article III Standing Requires Individualized Proof.................. 16

C. The District Court Did Not Abuse Its Discretion in Determining That Consent Requires Individualized Proof. ................................... 19

D. Certification Under Rule 23(b)(2) Was Plainly Unavailable in Light of the District Court's Findings............................................... 22

II. The District Court's Decision Does Not Raise Unsettled, Fundamental Issues or Threaten a Death-Knell Situation................................................ 22

CONCLUSION ........................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrosio v. Progressive Preferred Ins. Co.*,
154 F.4th 1107 (9th Cir. 2025) ....................16, 20

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................8

*Black Lives Matter Los Angeles v. City of Los Angeles*,
113 F.4th 1249 (9th Cir. 2024) ....................8

*Cahen v. Toyota Motor Corp.*,
717 F. App'x 720 (9th Cir. 2017) ....................17

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ....................19, 21

*Calhoun v. Google LLC*,
349 F.R.D. 588 (N.D. Cal. 2025) ....................21

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ....................2, 8, 23, 24

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ....................10

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ....................14, 22

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ....................18

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ....................23

*Garmong v. Tahoe Reg'l Plan. Agency*,
806 F. App'x 568 (9th Cir. 2020) ....................18

*Gartin v. S&M NuTec LLC*,
245 F.R.D. 429 (C.D. Cal. 2007) ....................16

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ....................................................21

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)................................................................16

*Griffith v. TikTok, Inc.*,
2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) ......................................................16

*Hart v. TWC Prod. & Tech. LLC*,
2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) ..............................................16, 21

*Healy v. Milliman, Inc.*,
164 F.4th 701 (9th Cir. 2026) ..............................................................................16

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ................................................................................15

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024) ...........................................................17

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ...........................................................................14, 18

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .........................................................................17, 19

*Poulos v. Caesars World, Inc.*,
379 F.3d 654 (9th Cir. 2004) ..................................................................................9

*Reyes v. Educ. Credit Mgmt. Corp.*,
773 F. App'x 989 (9th Cir. 2019) .........................................................................19

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024)..............................................................23

*Torres v. Prudential Fin., Inc.*,
2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ......................................................23

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................................17, 19

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)....................................8, 9

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ....................................16

*Van v. LLR, Inc.*,
61 F.4th 1053 (9th Cir. 2023) ....................................19

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................................9, 10

*Walker v. Life Ins. Co. of the Sw.*,
953 F.3d 624 (9th Cir. 2020) ....................................22

**Statutes**

18 U.S.C. § 2511 ....................................19

Cal. Civ. Code § 1798.81.5....................................16

Cal. Civ. Code § 1798.140....................................16

Cal. Civ. Code § 1798.150....................................16, 19

Cal. Penal Code § 631 ....................................15

## INTRODUCTION

In a typical privacy class action, plaintiffs focus on a specific information-sharing practice, prove that the company followed a common practice affecting all class members, and contend that the company treated customer information contrary to the promises made in its privacy disclosure. That is not this case.

Instead, Plaintiff asked the district court to certify a class action challenging what she called Capital One's "sprawling ecosystem" of using multiple technologies purportedly to share information with third parties for marketing purposes. That strategic choice proved fatal: the evidence proved Plaintiff's proposed classes lumped together differently situated consumers who had different information shared via different technologies for different purposes—many of which had nothing to do with marketing. Plaintiff also did not allege that Capital One misrepresented these practices, but rather claimed that Capital One did not provide enough information about them in one privacy disclosure, even though many consumers also received additional disclosures.

No court has ever certified a class that jumbles together so many different questions, and the district court did not abuse its discretion in refusing to be the first. The proposed class representatives' own experiences refuted Plaintiff's false assertion that "the challenged technologies uniformly transmitted the same categories of information to the same third parties." Pet. at 2. Those representatives

could not show a common practice when they could not even prove the same information was transmitted about *them*. No information was transmitted about them via most of the technologies at issue, and the remaining technologies transmitted different information for each plaintiff.

The district court's dismissal of one of the two proposed class representatives for lack of Article III standing confirmed that individualized inquiries lead to different results across the class. Order at 12. To resolve the claims of each class member, the district court "would need to engage in this same, fact-intensive inquiry for each" class member and "determine what, if any, data was shared, how that data was shared, for what purpose the data was shared, and the nature of that data shared." *Id.* The mix of disclosures to which class members were exposed created further predominance-defeating issues regarding consent. *See id.* at 11.

Nothing about the district court's order warrants interlocutory review. Plaintiff does not—and cannot—suggest that this case "presents an unsettled and fundamental issue of law relating to class actions." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). Instead, the order reflects the district court's faithful application of Supreme Court and this Court's precedents. Plaintiff fails to show the district court's fact-intensive ruling reflects anything like the kind of "manifestly erroneous" reasoning needed to justify interlocutory review. *Id.* This Court should deny the Petition.

## STATEMENT OF THE CASE

Plaintiff filed this lawsuit challenging Capital One's use of third-party technological tools. According to Plaintiff, Capital One used multiple tools to share credit card application information to conduct targeted advertising. *See* ECF 1.

Discovery told a different story. Like millions of companies, Capital One relies on third-party service providers to improve its customers' experiences in a variety of ways. ECF 215-1 at 2. Capital One also follows industry-leading practices to protect customer privacy: it limits what information it shares, encodes shared data so that its meaning is known only to Capital One, and contractually restricts how third parties can use the information. *Id.* at 4-5. Capital One then informs customers in easy-to-understand language what information is collected, how it is used, why it may be shared, and what they can do to limit information shared for certain purposes. *Id.* at 5-6.

Four plaintiffs nonetheless filed this lawsuit, although only two remained by the time Plaintiffs moved to certify a class: Ingraham and Williams. ECF 187-1. They asserted claims on behalf of nationwide classes for violations of the Electronic Communication Privacy Act ("ECPA"), as well as claims on behalf of California classes for violations of the California Invasion of Privacy Act ("CIPA") and the California Consumer Privacy Act ("CCPA"), and under the common law of negligence and unjust enrichment. Order at 3-4.

The two proposed class representatives sought certification of four classes. The first two (one national and one California) were referred to as "tracking tags" classes and focused on four technologies used on Capital One's credit card application webpages. *Id.* The other two, referred to as "server to server" classes (one national and one California), focused on four other technologies that shared information through different mechanisms. *Id.* Each technology had its own functionality and mode of operation, and each collected, stored, conveyed, and used information in different ways across different time periods. *Id.* at 8-10. For example:

- Two of the four technologies for the "tracking tags" classes—Adobe Analytics and Google Analytics—collect information to assist with routine website maintenance and improvement and are not used for advertising. ECF 215-1 at 3-4.
- The other two technologies in the "tracking tags" classes—the Meta Pixel and Google marketing tags—are used by Capital One to improve its online marketing activities. *Id.* at 4.
- The "server-to-server technology" classes included technologies—the Meta Conversions API, Google User-Provided Data Matching, Google Ads Data Hub, and Skai SFTP—that Capital One generally uses to analyze the effectiveness of its advertisements on Meta, Google, and Bing. *Id.*

The evidence proved that even where a technology may have been set up to collect information, a consumer's browsing behavior or browser settings could block the transmission of information. *Id.* at 10. The proposed class representatives proved this: Ingraham's applications involved only Adobe Analytics, Williams' involved only Adobe Analytics and Google Ads Data Hub, and no information for either's challenged interactions was shared through the remaining technologies. ECF 215-31 ¶¶ 17-18, 21-22; ECF 215-38 ¶¶ 15-16; ECF 215-44 ¶¶ 15-16; *see infra* at I.A. Evidence showed that key elements of the information at issue were provided only in coded form that did not reveal its content—and the coding methods used also varied. ECF 215-31 ¶¶ 9, 50; ECF 215-38 ¶ 18.

Capital One opposed class certification and moved to dismiss the claims of the proposed class representatives for lack of standing under Rule 12(b)(1). In a May 2026 order, the district court analyzed the individualized factual records for each plaintiff and ruled that Williams had Article III standing but Ingraham did not. *See* ECF 304 ("12(b)(1) Order"). The court concluded that "material fact disputes" remained for Williams as to whether she lacked a reasonable expectation of privacy in the data she provided on the Capital One website. *Id.* at 8, 13. But the court reached a different conclusion as to Ingraham, dismissing his claims for lack of Article III standing because his actions demonstrated that he lacked a reasonable

expectation of privacy. *Id.* at 13-14. The Petition does not even acknowledge that dismissal.

Shortly thereafter, the district court denied Plaintiff's class certification motion, holding that Plaintiff failed to satisfy her burden to prove common issues predominated over individual ones for three independent reasons. *See* Order at 5-13.

*First*, the district court found that determining what information (if any) about each class member was shared through any of the eight technologies "requires individualized proof." *Id.* at 9. In seeking class certification, Plaintiff relied on an expert, Dr. Egelman, whose opinions focused primarily on how the various technologies *could* collect and share data. ECF 187-15 ¶¶ 90-145. But Capital One responded with evidence of how each of the eight technologies was *in fact* used in its systems and the exact data that was *in fact* shared. ECF 215-1 at 2-5, 9.

After carefully examining the record, including multiple Capital One declarations that set forth exactly what information was shared about each proposed class representative via each technology, the district court found that the data collected and shared was not uniform. Order at 10. Indeed, "[t]he parties dispute which information was shared regarding the named Plaintiff," and "individualized inquiries would be needed to determine whether and, if so, what information was sent for any particular individual through a particular technology." *Id.*

*Second*, the district court found common issues did not predominate on the issue of consent. Every class member had to consent to Capital One's privacy policy before submitting an application. *Id.* at 11. But California residents received a different mix of disclosures as compared to non-California residents, and some class members formed an understanding of Capital One's practices based on additional information they received elsewhere. *Id.* The district court found that this need to "grapple with the diversity of disclosures that putative class members were exposed to" and to analyze "whether each individual knew about and consented to the interception based on the sources to which she had been exposed" created yet more "individualized inquiries that will overwhelm any common questions." *Id.*

*Third*, the district court held that individualized issues regarding Article III standing also defeated predominance. Pointing to the recent fact-intensive analysis it had just undertaken about Ingraham and Williams—concluding one had standing and the other did not—the court found it "would need to engage in this same, fact-intensive inquiry for each prospective plaintiff." *Id.* at 12. This would require the court "to determine what, if any, data was shared, how that data was shared, for what purpose the data was shared, and the nature of that data shared with respect to each plaintiff." *Id.* "Plaintiff," the court found, "has not demonstrated a method for answering those questions on a classwide basis sufficient to satisfy Rule 23's predominance requirement." *Id.*

## STANDARD OF REVIEW

Interlocutory appeals under Rule 23(f) are "the exception rather than the rule," and "should be granted sparingly." *Chamberlan*, 402 F.3d at 959. A class certification decision merits review only where it (1) is both "questionable" and represents the "death knell" of the case; (2) "presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review"; or (3) is "manifestly erroneous." *Id.* The manifest-error exception rarely applies and generally requires a court to have "applie[d] an incorrect Rule 23 standard or ignore[d] a directly controlling case." *Id.* at 962.

## ARGUMENT

### I. The Order Denying Class Certification Is Not "Manifestly Erroneous."

The predominance requirement of Rule 23 is "far more demanding" than its commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). Predominance "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Establishing predominance is "difficult" and "regularly presents the greatest obstacle to class certification." *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1258 (9th Cir. 2024). A district court's ruling that

individualized issues predominate over common questions is reviewed for abuse of discretion. *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir. 2004).

Plaintiff claims that the individual issues the district court identified are instead common ones. She is wrong. A question is common only if it can be addressed with classwide proof that will "generate common *answers* apt to drive the resolution of the litigation," meaning "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). By contrast, "[a]n individual question is one where 'members of a proposed class will need to present evidence that varies from member to member.'" *Tyson Foods*, 577 U.S. at 453.

"Dissimilarities within the proposed class are what have the potential to impede the generation of common answers," *Dukes*, 564 U.S. at 350, and the district court correctly found that to be the problem here. Because the court found predominance lacking for three independent reasons, reversing that ruling would require this Court to find the district court abused its discretion on all three points. It did not do so.

### A. The District Court Did Not Abuse Its Discretion in Deciding That Assessing the Information Shared (If Any) About Each Class Member Requires Individualized Proof.

The district court correctly rejected Plaintiff's inaccurate assertion—repeated in the Petition—that the "undisputed record" showed "that Capital One deployed the challenged technologies on the same webpages, configured them the same way, and used them to transmit the same categories of information to the same third parties." Pet. at 13. "Rule 23 does not set forth a mere pleading standard," *Dukes*, 564 U.S. at 350, and the district court therefore conducted the required "rigorous analysis" of the evidence to determine that Rule 23's predominance requirement was not satisfied, *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Plaintiff's class certification motion focused on "12 categories of data" she claimed were shared improperly. Order at 9. As to those 12 categories, the district court cited declarations from Capital One employees proving that "not every application Plaintiff submitted resulted in a transmission of information via the technologies at issue." *Id.* When information was shared, those same declarations proved that different information was shared about different individuals via different technologies at different time periods for different purposes. ECF 215-1 at 3-4, 8-11. Third-party evidence supported this conclusion: for example, although Plaintiff contended Capital One shared some of her information via the Meta Pixel, Meta had no evidence this occurred. *Id.* at 3. And even if it was possible for a data element to

be transmitted via a particular technology, consumers' browsing behavior or browser settings could block the transmission of certain information, as the proposed class representatives illustrated.

In short, the evidence conclusively refutes Plaintiff's assertion that the same information was uniformly shared. The proposed class representatives could not prove a common practice even as to the two of them: the data revealed no information at all was shared about them through at least five of the technologies, and different information was shared through the others. *See* Order at 9. The chart below summarizes (1) which data fields might *potentially* have been shared about a particular class member through each technology and (2) which data fields were *actually* transmitted in connection with the proposed class representatives' pre-lawsuit credit card applications.

| | Browser-Based Technologies | | | | Server-Side Technologies | | | |
|---|---|---|---|---|---|---|---|---|
| **Data Element at Issue** | **Adobe Analytics** | **Google Analytics** | **Meta Pixel** | **Google Marketing Tags** | **Meta Conv. API** | **Skai** | **Google Ads Data Hub – Standard Share** | **Google Ads Data Hub – User Provided Data Match** |
| Coded[1] Names | | | | | | | | **Williams** |
| Coded Email | | | | | | | | **Williams** |
| Coded Phone | | | | | | | | **Williams** |
| Coded Banded FICO Scores | | | | | | | **Williams** | |
| Coded Banded Income Segments | | | | | | | **Williams** | |
| Citizenship Status | | | | | | | | |
| Country of Origin | | | | | | | | |
| Employment Status | **Williams** | | | | | | | |
| Type of Bank Account | **Williams** | | | | | | | |
| Type of Credit Card | **Williams Ingraham** | | | | | | **Williams** | |
| Coded Value of Credit Card to Capital One | | | | | | | **Williams** | |
| Results of Application Process | **Williams Ingraham** | | | | | | | |

| Key | |
|---|---|
| | No evidence data element was shared via this technology |
| | Data element could be shared in some instances, but no evidence it was shared about Williams or Ingraham |
| | Evidence reflecting transmission for randomized IDs corresponding to Williams only |
| | Evidence reflecting transmission for randomized IDs corresponding to Williams and Ingraham |

[1] Data could be coded in two ways. Some data was coded using an industry-standard SHA-256 hashing method: for example, Plaintiff's "name" was transmitted to Google as "d87aa4bd7326c4f2491e18976f7030aa677dc411961f00182987947ce6a1d4d8." Other data was coded through an encryption method known only to Capital One but not the third party: for example, the actual data transmitted to Google that Plaintiff says corresponds to a "coded banded FICO score" was the transmission of a coded data element "1" in a field described with a single letter.

The Petition does not address any of this evidence, but instead, argues the district court should have deferred to her expert's opinions. Contrary to Plaintiff's assertion, the district court did not "ignor[e]" Dr. Egelman's opinions. Pet. at 14. Rather, as the court observed, "[t]he parties dispute which information was shared regarding even the named Plaintiff in this action"—and Dr. Egelman's analysis was how Plaintiff presented her side of this dispute. Order at 10; *see also id.* at 9 (citing Plaintiff's discussion of Dr. Egelman's analysis in her Reply). But Dr. Egelman presented only cursory evidence of what *might* be shared. His only attempt to analyze what *was* shared consisted of his review of exemplar Capital One records and a few visits to Capital One's website more than a year after the Complaint was filed. ECF 187-15 ¶¶ 145, 173-194. He made no attempt to explain why his opinions differed from the actual records of what was—and was not—shared. *Id.*

Unable to identify any genuine flaw in the district court's rigorous analysis of this evidence, the Petition falsely claims—12 times—that Dr. Egelman's analysis was "unchallenged" or "unrebutted." Pet. at 1-4, 6, 13, 14, 20-22. But Capital One *did* challenge that analysis through a competing expert report and declarations explaining exactly what Capital One's records show was transmitted, together with hard data showing what was (and was not) shared from the named plaintiffs. *See* ECF 292 at 63:5-64:22. It also presented contracts restricting how each technology could collect and transmit data and how each third party could use the information.

ECF 215-49 ¶¶ 18-33. Plaintiff cannot simultaneously say that identifying what information was shared "can be determined across the class using Capital One's own records," Pet. at 18, and then criticize the district court for relying on those same records when they confirm that information was *not* uniformly shared or used for the same purpose.

Indeed, the district court would have erred had it accepted at face value Dr. Egelman's analysis without accounting for Capital One's contrary evidence. This Court has made clear that merely presenting expert evidence is not sufficient to satisfy a plaintiff's burden under Rule 23, and a defendant that "did not raise a *Daubert* challenge to the expert evidence before the district court . . . may still argue that the evidence is not capable of answering a common question on a class-wide basis," as Capital One did here. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (en banc); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982-84 (9th Cir. 2011) (vacating class certification where court failed to conduct "rigorous analysis" of plaintiffs' expert evidence or consider defendants' contrary evidence). With or without expert evidence, a plaintiff must "prove the facts necessary to [satisfy Rule 23] by a preponderance of the evidence." *Olean*, 31 F.4th at 665.

The district court therefore correctly concluded that determining "whether" and "what information was sent for any particular individual through a particular

technology" was a predominance-defeating individualized issue. Order at 10. The information shared about each class member is not even common to the two proposed class representatives, let alone the entire proposed classes. ECF 215-31 ¶¶ 16, 18, 21-22; ECF 215-44 ¶¶ 12-16. And only after determining what information was shared about each class member could the court analyze additional issues in the case, including whether class members considered the information sufficiently sensitive to give rise to an Article III injury, whether they consented to the sharing, whether the sharing violated any of the laws at issue, and whether class members suffered damages.

This case stands in sharp contrast to the data-breach case Plaintiff relies on, where determining which class members were injured and had valid claims is a simple "plug-and-play" exercise. *See* Pet. at 15-16. Here, each of Plaintiff's claims rise and fall on individualized and technologically complex questions of what data was transmitted, how, why, and to whom. These differences are critical to elements of each of the claims. For example, determining "how" information was shared affects whether the information was intercepted in real-time, as required for a violation of ECPA or CIPA.[2] Likewise, determining "who" the information was shared with and "why" affects whether the transmission is permitted as one to a

[2] *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002) (ECPA only covers "acquisition of a communication contemporaneous with transmission"); Cal. Penal Code § 631(a) (only covering information shared "in transit").

service provider—such transmissions are authorized under ECPA, CIPA, and the CCPA, and cannot provide the basis for a common-law claim.[3] And "what" was shared affects not only whether class members have an Article III injury but also whether they can prove the elements of their claims.[4] The district court correctly found individualized inquiries precluded class certification.

### B. The District Court Did Not Abuse Its Discretion in Deciding That Article III Standing Requires Individualized Proof.

This Court has emphasized that "named and unnamed class members alike ha[ve] a burden to demonstrate standing" at least by "summary judgment." *Healy v. Milliman, Inc.*, 164 F.4th 701, 708 (9th Cir. 2026). As this Court observed in a related context, "it cannot be said that common issues predominate" where "figuring out whether each individual putative class member was harmed would involve an inquiry specific to that person." *Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107, 1112-13 (9th Cir. 2025). The district court therefore considered

---

[3] *E.g.*, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) (no CIPA violation in sharing with "service provider"); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *4 (C.D. Cal. Nov. 27, 2023) (similar analysis under ECPA); Cal. Civ. Code §§ 1798.140(ai)(2), 1798.140(ag)(1) (CCPA permits disclosures to service providers for business purposes).

[4] *See infra* at I.B; *see also Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *7 (C.D. Cal. Sept. 9, 2024) (whether ECPA and CIPA violation occurred "depends on the nature of the information collected"); Cal. Civ. Code §§ 1798.150(a)(1), 1798.81.5 (CCPA violation requires sharing "nonencrypted and nonredacted" "personal information"); *Hart v. TWC Prod. & Tech. LLC*, 2023 WL 3568078, at *11 (N.D. Cal. Mar. 30, 2023) (data collected informs unjust enrichment claim); *Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 439 (C.D. Cal. 2007) (negligence claims "ill-suited for class action litigation").

"whether Plaintiff has presented a method of proof capable of showing harm on a classwide basis." Order at 12. It correctly concluded that Plaintiff had not done so.

The mere transmission of data to a third party does not create Article III injury. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 786 (9th Cir. 2025) (affirming dismissal of information-sharing claim alleging transmission of "30 different categories" of data). Instead, binding precedent "contemplates a standing inquiry particularized to a plaintiff's circumstances." *Id.* at 791; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 435-38 (2021) (standing requires "concrete and particularized injury caused by the defendant"). In a case involving a purported privacy injury, that particularized analysis must account for whether (i) the data is "sensitive," *Popa*, 153 F.4th at 791, (ii) the use or disclosure of the information is "highly offensive," *id.*, (iii) the data is "individually identifiable" to the plaintiff, *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017), and (iv) the individual maintained a "reasonable expectation of privacy" in the data, *Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024) (mem.). *See also* 12(b)(1) Order at 7 (applying these principles in analyzing whether the proposed class representatives had standing).

The district court correctly noted that individualized inquiries were needed to answer these questions, and its ruling on the proposed class representatives' standing "is illustrative on this point." Order at 12. There, the court found Williams may have

a reasonable expectation of privacy in the information shared about her, while Ingraham's actions showed he did not. *See id.*; 12(b)(1) Order at 12-14. The court also found that "same, fact-intensive inquiry" would be needed for each potential class member, requiring analysis of "what, if any, data was shared, how that data was shared, for what purpose the data was shared, and the nature of the data shared with respect to each plaintiff." Order at 12. "A district court is in the best position to determine whether individualized questions, including those regarding class members' injury, 'will overwhelm common [questions] and render class certification inappropriate,'" and there is no reason to question its conclusion here. *Olean*, 31 F.4th at 669.

Plaintiff's criticism that the court did not conduct a claim-by-claim analysis is meritless. Pet. at 18. Her own authority confirms that "the district court need not repeat its standing analysis for claims that rely on the same underlying injury." *Garmong v. Tahoe Reg'l Plan. Agency*, 806 F. App'x 568, 571 (9th Cir. 2020). Plaintiff's purported injury for all of her claims was the same: she challenged the disclosure of her "Personal and Financial Information to Third Parties" via "code-based tracking devices" whose "only purpose is to collect information to be used for . . . marketing and sales purposes." ECF 1 at ¶¶ 3, 47.

Plaintiff also misreads *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 600 (9th Cir. 2020) as requiring a different analysis than the one set out in

*Popa*. As this Court has since observed, that case's conclusion was based on those plaintiffs' "individual circumstances . . . rather than simply greenlighting a per se rule for privacy statutes," and anything that could be read to support a different result "finds no support in *TransUnion*." *Popa*, 153 F.4th at 794.

### C. The District Court Did Not Abuse Its Discretion in Determining That Consent Requires Individualized Proof.

All claims fail for any class member who consented to the challenged conduct. Contrary to Plaintiff's suggestion,[5] lack of consent is an element of Plaintiff's CIPA, CCPA, and ECPA claims. *See Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019) ("plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record"); Cal. Civ. Code § 1798.150(a) (private action only for "unauthorized access and exfiltration, theft, or disclosure"); 18 U.S.C. § 2511(2)(d) (no ECPA violation "where one of the parties to the communication has given prior consent"). And while consent is a defense to Plaintiff's negligence and unjust enrichment claims, "[d]efenses must be considered" as part of the predominance inquiry. *Van v. LLR, Inc.*, 61 F.4th 1053, 1065 (9th Cir. 2023).

[5] Plaintiff misquotes *Calhoun*, which stated only that: "*The parties agree that* consent is 'an affirmative defense[.]'" *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (emphasized language omitted from Pet. at 8).

Unlike in other privacy lawsuits where classes have been certified, the Plaintiff here did not assert that Capital One made any affirmative misrepresentation that defeated consent. Instead, she argued only that Capital One's disclosures lacked sufficient detail. That omission-based theory can be resolved only after determining what information each class member was exposed to, and the district court correctly found that variation in the mix of disclosures available to each class member defeated class certification. Capital One did not provide the same disclosures to everyone: California residents received additional disclosures. *See* Order at 11. Moreover, some class members—including Plaintiff—read additional disclosures from third parties, such as Meta and Google, that provided additional information about how their information might be shared. *See* ECF 215-1 at 12-13. Contrary to Plaintiff's assertions that "there is no evidence that any class member was exposed to any source beyond the two disclosures in the record," Pet. at 11, the proposed representatives' own deposition testimony and the third-party disclosures they testified they read, ECF 215-1 at 12-13, demonstrated otherwise. *See Ambrosio*, 154 F.4th at 1112 (evidence that at least two putative class members are subject to an individualized defense sufficient to defeat class certification).

The district court therefore correctly recognized that questions of consent present "individualized inquiries that will overwhelm any common questions." Order at 11. These questions require evaluating "the diversity of disclosures that

class members were exposed to" and "whether each individual knew about and consented to the interception based on the sources to which she was exposed." *Id.*

Plaintiff is incorrect that in *Calhoun v. Google*, "this Court held that consent is an objective inquiry." Pet. at 2. *Calhoun* did not involve ECPA, CCPA, or claims for negligence or unjust enrichment. 113 F.4th at 1147. At best, *Calhoun* simply teaches that the meaning of written privacy disclosures is governed by a reasonable-consumer standard. *Id.* at 1148. That does not help Plaintiff, given the evidence showing different class members were exposed to a different mix of disclosures. *See Calhoun v. Google LLC*, 349 F.R.D. 588, 597 (N.D. Cal. 2025) ("implied consent inquiry permits a court to consider extrinsic evidence to the extent necessary to determine a party's subjective understanding of the terms to which they consented"); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *16 (N.D. Cal. Mar. 18, 2014) (Koh, J.) ("Implied consent is an intensely factual question."); *Hart*, 2023 WL 3568078, at *9 n.6 (although consent inquiry includes "an assessment of objective criteria," it also "turns on individual circumstances").

Plaintiff yet again misstates the record by asserting that "the district court found" Capital One's privacy disclosures "did not disclose the challenged practices." Pet. at 1; *see also id.* at 10. The order cited by Plaintiff, addressing an initial Rule 12(b)(6) motion, simply found that "the issue of whether Plaintiffs consented to Defendant's disclosure of their personal information is a factual question" and "the

Court need not reach it at the motion to dismiss stage." ECF 59 at 6. That order did not address the California-specific disclosure that California customers (including Plaintiff) received, which removes any doubt that Capital One discloses that it shares the information at issue here. *Id.* at 5-6.

### D. Certification Under Rule 23(b)(2) Was Plainly Unavailable in Light of the District Court's Findings.

The fact that the district court did not discuss why it declined to certify a class under Fed. R. Civ. P. 23(b)(2) does not justify an interlocutory appeal. Plaintiff gave this issue short shrift in a single paragraph at the end of her motion. ECF 187-1 at 25. The district court did not need to separately discuss Rule 23(b)(2), as its analysis made clear that Capital One did not "act[] . . . on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2); *see also Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 629 (9th Cir. 2020) (class certification ruling may be sustained "on any ground supported by the record"). Moreover, "[c]lass certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive," *Ellis*, 657 F.3d at 986, and Plaintiff was seeking billions of dollars in monetary relief. ECF 187-1 at 24.

## II. The District Court's Decision Does Not Raise Unsettled, Fundamental Issues or Threaten a Death-Knell Situation.

The remaining arguments presented in the Petition do not support interlocutory review.

*First*, the Petition does not raise "unsettled and fundamental issue[s] of law." *Chamberlan*, 402 F.3d at 959. Nothing in the order "creates a roadmap to defeat certification in virtually every privacy case." Pet. at 3. As the cases Plaintiff cites illustrate, courts that certified privacy class actions have done so when a common set of information was transmitted, through the same type of technology, for the same purpose, often in ways that purportedly violated the company's stated privacy practices. For example, in *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 574-75 (N.D. Cal. 2025), the court certified a class when all class members "used the Flo App and were subject to the same app and [software development kit] practices" purportedly transmitting sensitive menstrual and pregnancy data contrary to Flo's privacy policy promises. Likewise, in *Torres v. Prudential Fin., Inc.*, 2024 WL 4894289, at *1 (N.D. Cal. Nov. 26, 2024), the court certified a class involving information shared with a single third-party through a single technology involving a narrow set of policy disclosures. Finally, in *Rodriguez v. Google LLC*, 2024 WL 38302, at *5 (N.D. Cal. Jan. 3, 2024), the court certified a class challenging a single technology that collected data from all class members, even though each had "affirmatively sought out and clicked on Google's [opt-out] buttons."

This case is nothing like those. Plaintiff does not—and cannot—cite any decision certifying a class challenging a "sprawling ecosystem" of different information shared through different technologies with different third parties for

different purposes over different time periods. Nor is this a case involving affirmative misrepresentations. And there is not a shred of evidence that Capital One ignores users' expressed privacy preferences.

*Second*, Plaintiff's assertion that "the district court's order effectively ends this litigation" because her individual claims are "economically irrational" to pursue (Pet. at 22) contradicts her recent representation to the district court that she intends to file a motion for partial summary judgment and then proceed to trial. *See* ECF 314 at 4. This is not the kind of rare situation *Chamberlan* envisioned warranting interlocutory review because Plaintiff otherwise could not ultimately pursue an appeal.

Plaintiff elected to seek certification of sweeping classes involving vastly different practices. While Plaintiff faults the district court for not considering certifying subclasses, *see* Pet. at 16, she never asked the district court to do so or identified people who could represent each subclass. In failing to show predominance across her broad proposed classes, Plaintiff has not provided a sufficient basis to grant interlocutory review.

## CONCLUSION

The Petition should be denied.

Dated July 10, 2026

Respectfully submitted,

*/s/ Andrew Soukup*

Andrew Soukup
Marianne Spencer
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000

Kathryn E. Cahoy
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4735

Matthew Q. Verdin
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-7065

*Attorneys for Defendant-Respondent*
*Capital One Financial Corporation*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 5(c) and Circuit Rules 5-2 and 32-3 because it contains 5,530 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point, Times New Roman font.

July 10, 2026

*/s/ Andrew Soukup*
Andrew Soukup

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2026, I electronically filed this petition with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I also caused a copy of the petition to be served via mail and electronic mail to the following recipients:

Lesley E. Weaver
Anne K. Davis
STRANCH, JENNINGS & GARVEY, PLLC
1111 Broadway, Suite 300
Oakland, CA 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

J. Gerard Stranch IV
Michael C. Iadevaia
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com
miadevaia@stranchlaw.com

Lynn A. Toops
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
ltoops@cohenmalad.com

July 10, 2026

*/s/ Andrew Soukup*
Andrew Soukup