**No. 26-4182**

# In the United States Court of Appeals
## for the Ninth Circuit

DEIA WILLIAMS,
*Plaintiff-Petitioner*,

v.

CAPITAL ONE FINANCIAL CORP.,
*Defendant-Respondent*.

On Petition for Permission to Appeal from the United States District Court for the Northern District of California, Case No. 3:24-cv-05985-TLT (Hon. Trina L. Thompson)

**REPLY IN SUPPORT OF PETITION FOR PERMISSION TO APPEAL**

J. Gerard Stranch IV
Michael C. Iadevaia
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com
miadevaia@stranchlaw.com

Lesley Weaver
Anne K. Davis
STRANCH, JENNINGS & GARVEY, PLLC
1111 Broadway
Suite 300
Oakland, CA 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

Lynn A. Toops
COHENMALAD, LLP
One Indiana Square
Suite 1400
Indianapolis, IN 46204
(317) 636-6481
ltoops@cohenmalad.com

*Counsel for Plaintiff-Petitioner*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 2

I. The District Court's Predominance Ruling Is Manifestly Erroneous. .......................................................................................... 2

A. Capital One's Answer confirms that the information shared can be assessed using classwide proof. ...................................... 2

B. The district court did not perform the required standing analysis. ........................................................................................ 4

C. Capital One abandons the district court's consent standard and cannot salvage the Order with an alternative theory unsupported by the record. .......................................................... 7

D. Capital One cannot supply reasoning the district court never gave on Plaintiff's request for a Rule 23(b)(2) class. ..... 10

II. The Petition Satisfies the Other Criteria for Review. ......................... 11

CONCLUSION ......................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Accellion, Inc. Data Breach Litig.*,
2025 WL 2799102 (N.D. Cal. Sep. 30, 2025) ....................4, 7

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .................... 7, 8, 9

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) .................... 2, 12

*Dupler v. Costco Wholesale Corp.*,
249 F.R.D. 29 (E.D.N.Y. 2008)....................8

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ....................10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................5

*In re First Alliance Mortgage Co.*,
471 F.3d 977 (9th Cir. 2006) ....................2, 6

*Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025)....................8

*Garmong v. Tahoe Reg'l Plan. Agency*,
806 F. App'x 568 (9th Cir. 2020)....................4

*Hart v. TWC Prod. & Tech. LLC*,
2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) ....................5

*Lytle v. Nutramax Labs., Inc.*,
114 F.4th 1011 (9th Cir. 2024) ....................3

*Microsoft Corp. v. Baker*,
582 U.S. 23 (2017)....................12

*Miles v. Kirkland's Stores Inc.*,
89 F.4th 1217 (9th Cir. 2024) ........................................................4, 7

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024)..........................................10

*Sali v. Corona Reg'l Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018) ..........................................................5

*Van v. LLR, Inc.*,
61 F.4th 1053 (9th Cir. 2023) ........................................................10

**Rules**

Fed. R. Civ. P.
23(b)(2) ....................................................................................... 1, 10
23(b)(3) .........................................................................................10
23(f)..............................................................................................11

# INTRODUCTION

Capital One's Answer does not rescue the district court's Order. It confirms why review is warranted. Rather than defend the Order, Capital One abandons its central premises. Capital One concedes the district court applied the wrong consent standard, excuses the court's complete failure to address Plaintiff's request for a Rule 23(b)(2) class, asks this Court to overlook the absence of a claim-by-claim standing analysis that Article III requires, and attempts to recast the predominance inquiry around purported factual disputes the district court never resolved. At every turn, Capital One asks this Court to decline review of the Order based on reasoning the district court never gave or assumptions the record does not support.

But Rule 23 demands a rigorous analysis grounded in the evidentiary record. Capital One's Answer confirms the very premise the district court rejected: that Capital One employed a discrete set of tracking technologies configured to function the same way for every user throughout the class period. The central liability questions, then, are necessarily common: what the technologies collected, how they operated, where they transmitted information, and why they did so. The district court never reconciled its conclusion with that undisputed record. Instead, it presumed individualized issues despite common proof and in disregard of this Court's binding precedent. The Order's disconnect from the governing law and the record makes it

so "obviously wrong" that it warrants this Court's review. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 958 (9th Cir. 2005). The petition should be granted.

## ARGUMENT

### I. THE DISTRICT COURT'S PREDOMINANCE RULING IS MANIFESTLY ERRONEOUS.

#### A. Capital One's Answer confirms that the information shared can be assessed using classwide proof.

Capital One's Answer confirms that the challenged technologies operated uniformly. It explains how each uniformly configured technology functioned, what categories of information it could transmit, and to whom it transmitted that information. Answer at 12. Those are quintessential common questions. Capital One's mistake, like the district court's, is to equate differences in the data Capital One retained in its standardized system with differences in the system itself. But Rule 23 does not require a plaintiff to prove that a defendant retained records showing a uniform practice produced identical results for every class member. *See In re First Alliance Mortgage Co.*, 471 F.3d 977, 991 (9th Cir. 2006). It asks whether liability concerning that practice can be proven using common evidence. *Id.*

Here, it plainly can. The very questions Capital One claims require individualized evidence are answered by the same common evidence for every class member. Take its assertion that determining *how* information was shared—and thus whether it was intercepted in real time—somehow depends on each individual user. Answer at 15. It does not. The operation of the tracking technologies did not change

from consumer to consumer. As Capital One's own records and Dr. Egelman's analysis show, each technology was configured to function the same way for every user. Dkt. 239-1 at 11–12. If Adobe Analytics intercepted information in real time, it did so because Capital One configured it to operate that way for every visitor to the relevant webpages. Dkt. 187-15, ¶¶ 161–64. The same is true of "who" received the information and "for what purpose." Answer at 15–16. Class members' data transmitted through Adobe Analytics went to Adobe, and for Adobe's targeted marketing and analytics. *Id.*, ¶¶ 133–35, 161–64. Those questions are answered by examining Capital One's implementation of each technology, not by conducting consumer-by-consumer mini-trials.

Capital One cannot defend the district court's failure to engage with Dr. Egelman's unrebutted opinions by pointing to a supposed factual dispute over what information was shared. Answer at 13. If that factual dispute was material to its Order—as Capital One suggests—then the district court had to resolve it. *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1025 (9th Cir. 2024) ("[C]ourts may not avoid resolving questions pertinent to class certification merely because they overlap with the merits of the plaintiffs' case."). Nor did Dr. Egelman merely speculate about "what *might* be shared." Answer at 13 (emphasis in original). He concluded—based on Capital One's own records, technical documentation, and his independent testing—that the technologies were deployed on the same webpages, configured the

same way, and transmitted the same categories of information to the same recipients. Dkt. 187-15. Those opinions go to the heart of predominance, but the district court inexplicably ignored them.

The only genuine variation among class members that Capital One identifies concerns the datapoints Capital One retained but uniformly transmitted. Answer at 15. Under this Court's precedent, that is not enough to defeat predominance. Courts readily determine, on a category-by-category basis, which datapoints were unlawful, making determination of each consumer's injury—even if different—a "'plug-and-play' exercise." *In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *13 (N.D. Cal. Sep. 30, 2025) (quoting *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1226 (9th Cir. 2024)). If the only issue with any variation concerns the datapoints transmitted by the tracking technologies, Capital One never shows why that question, too, cannot be answered with the same common evidence.

### B. The district court did not perform the required standing analysis.

Capital One agrees the district court made no attempt to conduct its Article III standing analysis on a claim-by-claim basis. Answer at 18. That alone is reversible error. *Garmong v. Tahoe Reg'l Plan. Agency*, 806 F. App'x 568, 571 (9th Cir. 2020).

Capital One's only answer for that error is, because Plaintiff allegedly suffered the same injury for all her claims, the district court did not need to analyze standing claim by claim. Answer at 18. That is wrong. The Ninth Circuit has expressly

recognized that unjust-enrichment and privacy claims protect different interests. An unjust enrichment claim vindicates a plaintiff's "legal interest in unjustly earned profits," *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020), whereas a privacy claim vindicates a plaintiff's "interest in controlling [her] personal information," *id.* at 599. *See also Hart v. TWC Prod. & Tech. LLC*, 2023 WL 3568078, at *4–6 (N.D. Cal. Mar. 30, 2023). Different claims may vindicate different injuries and thus require different standing analyses. And here, no claim involves a privacy injury—indeed, the district court had earlier dismissed Plaintiff's privacy claim. Dkt. 59 at 10–11.

Had the district court proceeded claim by claim, it would have concluded that Plaintiff's claims do not require individualized proof. For example, to establish an unjust-enrichment injury, Plaintiff need only show that Capital One "received and retained a financial benefit from [Plaintiff's] data." *Hart*, 2023 WL 3568078, at *5. Plaintiff's damages expert, ignored by the district court, did just that, modeling Capital One's financial benefit on a classwide basis. Dkt. 187-53 ¶¶ 157–61. By not considering that evidence and applying the wrong legal standard, the district court committed precisely the error this Court has condemned. *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018).

Setting that issue aside, the district court still erred because a privacy injury—even if it could be relevant to determining standing for Plaintiff's other claims—can

be proven using common evidence for the reasons explained in Section I.A. Capital One largely repeats the district court's conclusions, Answer at 18, but it never identifies what individualized question would actually require class-member-by-class-member adjudication.

The district court's own reasoning proves just the opposite. It held that the disclosure of Plaintiff Williams's information was "highly offensive" based solely on the nature of the information transmitted. Dkt. 304 at 12. That inquiry is objective. It turns on the character of the datapoints transmitted, not the identity of the individual whose information was transmitted. If transmitting Plaintiff Williams's information through Adobe Analytics is enough to sustain her privacy injury, then the same must be true for every class member whose same batch of information was transmitted through Adobe Analytics.[1] And to make that determination on a classwide basis, all it takes is filtering through Capital One's spreadsheets to determine which individuals had the same information transmitted through Adobe Analytics[2]—precisely the "'plug-and-play' exercise" courts are readily equipped to

[1] The district court oddly dismissed Plaintiff Ingraham's claims for lack of standing because he "submitted two additional applications for credit cards on Defendant's webpage even after filing this lawsuit . . . ." Dkt. 304 at 13. Although wrong, this issue does not defeat predominance because Capital One presented no evidence that any other class member saw the lawsuit or was aware of the allegations before they applied.

[2] That said, Rule 23 does not require that every class member had the same datapoints transmitted. *In re First Alliance Mortgage Co.*, 471 F.3d at 991. But even

handle. *In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *13 (quoting *Miles*, 89 F.4th at 1226).

### C. Capital One abandons the district court's consent standard and cannot salvage the Order with an alternative theory unsupported by the record.

Whether Plaintiff consented to Capital One's data transmission practices by agreeing to the privacy policies turns on an objective question. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024). That question, contrary to the district court's holding, is readily susceptible to classwide resolution. Pet. at 9.

Not even Capital One defends the standard the district court applied. It concedes that *Calhoun* "teaches"—contrary to the district court's Order—"that the meaning of written privacy disclosures is governed by a reasonable-consumer standard." Answer at 21. Yet it insists the district court correctly recognized that "different class members were exposed to a different mix of disclosures" based on Plaintiff's "omission-based theory," which supposedly required the district court to assess "what information each class member was exposed to." *Id.* at 20, 21.

That misunderstands the legal standard. Under binding Ninth Circuit precedent, consent must be "actual," which means "disclosures must explicitly notify users of the conduct at issue." *Calhoun*, 113 F.4th at 1147 (internal quotation

---

if it did, the point is that this issue can still be resolved on a classwide basis using Capital One's spreadsheets.

omitted). Consent is effective only if the person alleging harm consents "to the particular conduct, or to substantially the same conduct." *Id.* Without any disclosures that affirmatively informed consumers of the challenged conduct, there can be no "actual" consent. *Id.* Whether Capital One misrepresented something in its disclosures does not necessarily bear on consent.

In any event, neither Capital One nor the district court identified any evidence supporting the idea that consumers independently found and read third-party privacy policies that Capital One never directed them to and never identified as relevant. Answer at 21. Unlike the cases cited by Capital One, Answer at 21, predominance cannot be defeated without any evidence of that happening here. *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 576 (N.D. Cal. 2025) (rejecting argument where defendant offered no "evidence of readership that might show that a meaningful portion of the class saw any of these publications"). Nor could there be such evidence because Capital One never publicly disclosed which tracking technologies it used. A reasonable consumer would have had no way of knowing which third-party policies to consult. And Rule 23 simply does not demand omniscience. *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 45 (E.D.N.Y. 2008) (finding predominance satisfied even though "there is always the possibility that a particular plaintiff, despite a nondisclosure by the defendant, somehow stumbled upon the nondisclosed fact at issue on his or her own").

Even if relevant, the only third-party "notices" Capital One identified below are Meta's and Google's privacy policies. Dkt. 313-1 at 21. Those policies undermine, rather than support, Capital One's argument. Meta tells users: "[t]o learn how a business processes or shares your information, read their privacy policy." Dkt. 214-26 at 9. Google says: "[t]his Privacy Policy doesn't apply to services that have separate privacy policies that do not incorporate this Privacy Policy," and Capital One's policies never incorporated Google's. Dkt. 214-31 at 23. So neither policy supplements Capital One's disclosures. Instead, both direct consumers right back to Capital One's policies.

And Capital One's two policies—the only two in the record—do not disclose the challenged practice.[3] Disregarded by Capital One, in denying Capital One's second motion to dismiss, the district court expressly reaffirmed its earlier holding that neither policy informed consumers that Capital One would transmit their employment information or credit card approval status to third parties. Dkt. 304 at 13.

But the merits of consent do not bear on class certification. Whether Capital One's disclosures satisfy *Calhoun*'s objective "reasonable consumer" standard

---

[3] To the extent that Capital One claims the additional CCPA disclosure provided to California residents defeats predominance, that argument proves too much. If the disclosure is inadequate, then it does not matter whether other class members were exposed to it. In addition, Plaintiff sought certification of a California subclass to account for that uniform additional disclosure.

presents a quintessential common question. Either the disclosures objectively provided adequate notice of Capital One's data transmission practices, or they did not. If they did not, no class member could have impliedly or expressly consented to those practices based on the same uniform disclosures. The district court reached the opposite conclusion only by disregarding *Calhoun*'s standard, buying into Capital One's speculation, and improperly presuming individualized issues. *See Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023) ("[D]efendant must invoke individualized issues and provide sufficient evidence that the individualized issues bar recovery on at least some claims"). That is exactly what *Van* forbids.

### D. Capital One cannot supply reasoning the district court never gave on Plaintiff's request for a Rule 23(b)(2) class.

Capital One concedes the district court never addressed Plaintiff's request for certification under Rule 23(b)(2). Answer at 22. That omission is reason enough for this Court's review.

Unable to defend the omission, Capital One tries to excuse it, asserting that the court "did not need to separately discuss" Rule 23(b)(2) because Plaintiff seeks monetary relief. *Id.* But this Court has expressly recognized the opposite: classes may be certified under ***both*** Rule 23(b)(2) and Rule 23(b)(3). *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 n.10 (9th Cir. 2011). And district courts do exactly that. *See, e.g.*, *Rodriguez v. Google LLC*, 2024 WL 38302, at *10 (N.D. Cal. Jan. 3, 2024). The district court never performed any analysis on this issue, and

Capital One cannot salvage the Order by supplying legally unsound reasoning the district court itself never gave.

## II. THE PETITION SATISFIES THE OTHER CRITERIA FOR REVIEW.

The Petition explains the far-reaching ramifications of the district court's Order for privacy litigation involving modern tracking technologies. Capital One responds that this case is somehow different from most privacy cases because Plaintiff challenges its "sprawling ecosystem" of tracking technologies—as opposed to just one tool. Answer at 23. But that argument only underscores why Rule 23(f) review is warranted. Under Capital One's theory, the more tracking technologies a company deploys across the same webpages to collect and share consumers' private information, the less likely its conduct can ever be adjudicated on a classwide basis. That is a perverse result. It would reward companies that engage in the most extensive and sophisticated data collection, like Capital One, by insulating them from class litigation, while exposing only those that use a single technology to classwide accountability. Nothing in Rule 23—or under this Court's precedent—supports such a rule. If accepted, Capital One's theory would splinter this case into nearly seven separate lawsuits—one for each tracking technology—even though each challenges the same overarching practice. Neither Rule 23 nor common sense demands such wasteful duplication.

Capital One separately argues that the district court's Order does not effectively end this case. Answer at 24. But that misunderstands the death-knell doctrine. The question is whether it is "economically irrational to bear the cost of litigating th[e] case to final judgment." *Microsoft Corp. v. Baker*, 582 U.S. 23, 34 (2017). Capital One does not dispute that Plaintiff's individual claims are worth less than the cost of litigating them to judgment. That is precisely the circumstance *Chamberlan* identified: "proceeding to a final judgment on the merits of an individual claim that, without the class, is worth far less than the cost of litigation." 402 F.3d at 957. The mere possibility that a plaintiff might nevertheless press forward—despite the economics—does not undermine the fact that the district court's Order sounds the death knell for millions of other consumers.

## CONCLUSION

This Court should grant the petition for permission to appeal.

Dated: July 17, 2026

Respectfully submitted,

/s/ Lesley E. Weaver
Lesley E. Weaver
Anne K. Davis
STRANCH, JENNINGS & GARVEY, PLLC
1111 Broadway, Suite 300
Oakland, CA 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

J. Gerard Stranch IV

Michael C. Iadevaia
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com
miadevaia@stranchlaw.com

Lynn A. Toops
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
ltoops@cohenmalad.com

*Counsel for Plaintiff-Petitioner*

## CERTIFICATE OF COMPLIANCE

This reply complies with the page-volume limitations set out in Ninth Circuit Rules 5-2(b) and 32-3 because it is 2,762 words. This reply complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Lesley E. Weaver*
Lesley E. Weaver

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2026, I electronically filed the foregoing reply with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit using the ACMS system. All participants are registered ACMS users and will be served by the ACMS system.

*/s/ Lesley E. Weaver*
Lesley E. Weaver